864 So.2d 117 (2003)
Raleigh LANDRY and Clailee Aucoin Landry
v.
AVONDALE INDUSTRIES, INC., et al.
Nos. 2003-CC-0719, 2003-CC-0993, 2003-CC-1002.
Supreme Court of Louisiana.
December 3, 2003.
Opinion Concurring in Denial of Rehearing January 30, 2004.
*118 David S. Blank, Scott T. Winstead, Beau E. LeBlanc, King, LeBlanc & Bland, New Orleans, Counsel for Applicant in No. 2003-CC-1002.
Stephen N. Elliott, Francine M. Giugno, Robert A. Knight, Bernard, Cassisa, Elliott & Davis, Metairie, Counsel for Applicant in No. 2003-CC-0993.
Wendy K. Lappenga, Andrew L. Plauche, Jr., Plauche, Maselli, Landry & Parkerson, New Orleans, Johanna G. King, Richard M. Perles, Gary A. Lee, Lee, Futrell & Perles, New Orleans, Samuel M. Rosamond, III, Thomas W. Aycock, Crawford & Lewis, Baton Rouge, Counsel for Applicant in No. 2003-CC-0719.
Stephen N. Elliott, Francine M. Giugno, Robert A. Knight, Bernard, Cassisa, Elliott & Davis, Metairie, Wendy K. Lappenga, Andrew L. Plauche, Jr., Plauche, Maselli, Landry & Parkerson, New Orleans, Johanna G. King, Richard M. Perles, Gary A. Lee, Lee, Futrell & Perles, New Orleans, Samuel M. Rosamond, III, Thomas W. Aycock, Crawford & Lewis, Baton Rouge, Geoffrey P. Clement, Gary M. Zwain, Dana D. Anderson-Carson, Duplass, Zwain, Bourgeois & Morton, Lynn M. Luker, James F. d'Entremont, Arthur W. Stout, III, Deutsch, Kerrigan & Stiles, New Orleans, Susan B. Kohn, Simon, Peragine, Smith & Redfearn, New Orleans, *119 Brian C. Bossier, Blue, Williams, Metairie, Christopher K. Lightfoot, Valerie T. Schexnayder, Hailey, McNamara, Hall, Larmann & Papale, Metairie, E. Scott Hackenberg, Henchy, Verbois, Futrell & Foil, Baton Rouge, Troy N. Bell, Aultman, Tyner, Ruffin & Yarbrough, New Orleans, Lawrence G. Pugh, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, Charles V. Giordano, Miranda, Warwick & Milazzo, Metairie, Larry G. Canada, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Gregory E. Bodin, Taylor, Porter, Brooks & Phillips, Baton Rouge, Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, LaPlace, Gordon P. Wilson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, Scott P. Yount, Walter S. Brown, Preston & Cowan, John B. Edwards, III, Dogan & Wilkinson, John D. Cosmich, Forman, Perry, Watkins, Krutz & Tardy, Laurie J. Hutchings, Dawn E. Fulce, Kenan S. Rand, Jr., New Orleans, Counsel for Respondent in No. 2003-CC-1002.
Wendy K. Lappenga, Andrew L. Plauche, Jr., Plauche, Maselli, Landry & Parkerson, New Orleans, Johanna G. King, Richard M. Perles, Gary A. Lee, Lee, Futrell & Perles, New Orleans, Samuel M. Rosamond, III, Thomas W. Aycock, Crawford & Lewis, Baton Rouge, David S. Bland, Scott T. Winstead, Beau E. LeBlanc, King, LeBlanc & Bland, New Orleans, Geoffrey P. Clement, Gary M. Zwain, Dana D. Anderson-Carson, Duplass, Zwain, Bourgeois & Morton, Metairie, Lynn M. Luker, James F. D'Entremont, Arthur W. Stout, III, Deutsch, Kerrigan & Stiles, New Orleans, Susan B. Kohn, Simon, Peragine, Smith & Redfearn, New Orleans, Brian C. Bossier, Blue, Williams, Metairie, Christopher K. Lightfoot, Valerie T. Schexnayder, Hailey, McNamara, Hall, Larmann & Papale, Metairie, E. Scott Hackenberg, Henchy, Verbois, Futrell & Foil, Baton Rouge, Troy N. Bell, Aultman, Tyner, Ruffin & Yarbrough, New Orleans, Lawrence G. Pugh, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, Charles V. Giordano, Miranda, Warwick & Milazzo, Metairie, Larry G. Canada, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Gregory E. Bodin, Taylor, Porter, Brooks & Phillips, Baton Rouge, Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, LaPlace, Gordon P. Wilson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, Scott P. Yount, Walter S. Brown, Preston & Cowan, John B. Edwards, III, Dogan & Wilkinson, John D. Cosmich, Forman, Perry, Watkins, Krutz & Tardy, Laurie J. Hutchings, Dawn E. Fulce, Kenan S. Rand, Jr., New Orleans, Counsel for Respondent in No. 2003-CC-0993.
Stephen N. Elliott, Francine M. Giugno, Robert A. Knight, Bernard, Cassisa, Elliott & Davis, Metairie, David S. Bland, Scott T. Winstead, Beau E. LeBlanc, King, LeBlanc & Bland, New Orleans, Geoffrey P. Clement, Gary M. Zwain, Dana D. Anderson-Carson, Duplass, Zwain, Bourgeois & Morton, Metairie, Lynn M. Luker, James F. d'Entremont, Arthur W. Stout, III, Deutsch, Kerrigan & Stiles, New Orleans, Susan B. Kohn, Simon, Peragine, Smith & Redfearn, New Orleans, Brian C. Bossier, Blue, Williams, Metairie, Christopher K. Lightfoot, Valerie T. Schexnayder, Hailey, McNamara, Hall, Larmann & Papale, Metairie, E. Scott Hackenberg, Henchy, Verbois, Futrell & Foil, Baton Rouge, Troy N. Bell, Aultman, Tyner, Ruffin & Yarbrough, New Orleans, Lawrence G. Pugh, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, Charles V. Giordano, Miranda, Warwick & Milazzo, Metairie, Larry G. Canada, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Gregory E. Bodin, Taylor, Porter, Brooks & Phillips, *120 Baton Rouge, Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, LaPlace, Gordon P. Wilson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, Scott P. Yount, Walter S. Brown, Preston & Cowan, John B. Edwards, III, Dogan & Wilkinson, John D. Cosmich, Forman, Perry, Watkins, Krutz & Tardy, Laurie J. Hutchings, Dawn E. Fulce, Kenan S. Rand, Jr., New Orleans, Counsel for Respondent in No. 2003-CC-719.
VICTORY, J.
We granted this writ application to determine whether the wife of a worker who was exposed to asbestos at various intervals from 1959 to 1974, and who was diagnosed with and died from mesothelioma in 2002: (1) has a claim for pre-death loss of consortium under La. C.C. art. 2315; and, if so, (2) whether the worker's employers and executive officers and directors of the employers are immune from this claim by virtue of La. R.S. 23:1032. After reviewing the record and the applicable law, we find that to allow the loss of consortium claim would be an impermissible retroactive application of La. C.C. art. 2315, and also, we find that the employers and executive officers and directors are immune from this claim. Therefore, we grant the defendants' exceptions of no cause of action.

FACTS AND PROCEDURAL HISTORY
Raleigh Landry worked for Avondale Industries from 1965 to 1967 and for McDermott, Inc., from 1959 to 1961, 1964 to 1965, and from 1973 to 1974. Plaintiffs allege he was exposed to asbestos during these employments, and that as a result, he contracted mesothelioma, which was diagnosed in January of 2002, and which caused his death on November 21, 2002. Raleigh Landry and his wife, Clailee Landry, filed suit against Avondale and its executive officers, McDermott and its executive officers, and several manufacturers of asbestos products for damages arising from his contraction of mesothelioma, including, but not limited to, loss of consortium claims filed on behalf of Mrs. Landry. By supplemental and amending petition, Jamie Landry and Glen Landry, children of Raleigh Landry, were substituted for Mr. Landry's survival damages, and, along with their mother, asserted survival and wrongful death actions which arose due to the injury and death of Raleigh Landry.
Peremptory exceptions of no cause of action for the loss of consortium claim were filed by the executive officer defendants of Avondale and by McDermott, and separate exceptions of these issues were filed by the manufacturing defendants, Reilly-Benton Company, Inc., and Liberty Mutual Insurance Co. These exceptions were denied by the trial court on October 29, 2002, and November 21, 2002. The trial court gave the following reasons for his judgments:
In Coates v. Owens-Corning Fiberglass[Fiberglas] Corp., 444 So.2d 788 (La.App. 4 Cir.1984) the court held that a cause of action for loss of consortium does not arise until the plaintiff actually suffers the loss. See also Delphen v. Dept. of Transp., 657 So.2d 328 (La.App. 4 Cir.1995) for the proposition that until an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium, society and service, they have suffered no injury.
For similar reasons, this court finds that the instant case involves alleged asbestos-related injuries, which can result in a slowly developing condition which is not even noticeable, much less disabling, until this condition progresses to a point in time wherein a medical diagnosis can be *121 made. Therefore, petitioner Clailee Landry would suffer no injury until her husband's asbestos-related cancer progressed to such an extent that she was actually deprived of his consortium, society and service. Prior to Mr. Landry's diagnosis with mesothelioma in January 2002, any loss of consortium claim by Mrs. Landry would have been speculative and premature. Accordingly, as Mrs. Landry's loss of consortium arose after September 10, 1982, the effective date of Act 202 allowing for loss of consortium, the court finds that Mrs. Landry can assert her claim against defendants, including those executive officer defendants.
Since Mrs. Landry's claim for loss of consortium is a derivative claim, it is not subject to the exclusive remedy provisions of the workers' compensation statute since the primary claim of Mr. Landry arises due to an injury (mesothelioma) that is outside of the exclusive remedy of the workers' compensation act. Only when the primary claim falls within the exclusive remedy of the workers compensation statute are the derivative claims also barred or governed by the workers' compensation act. Walls v. American Optical Corp., 740 So.2d 1262 (La.1999) and Vallery v. Southern Baptist Hospital, 630 So.2d 861 (La.App. 4 Cir.1993).
The court of appeal, in 2-1 decisions, denied the defendants' writ applications, ruling that "[o]n the showing made, we decline to exercise our supervisory jurisdiction." Landry v. Avondale Industries, Inc., et al., 02-2341 (La.App. 4 Cir. 2/11/03), 02-2372 (La.App. 4 Cir. 3/6/03), 02-2373 (La.App. 4 Cir. 3/6/03). We granted and consolidated the defendants' writ applications. Landry v. Avondale Industries, Inc., et al., 03-0719 (La.6/20/03), 847 So.2d 1248 (filed by Peter Territo, Edward Blanchard, J. Melton Garrett, Albert Bossier, Jr., Commercial Union Insurance Company, Addison Daigle, Francis C. Naquin and H.W. Bailey), c/w 03-0993 (La.6/20/03), 847 So.2d 1247 (filed by Reilly-Benton Co., Inc. and Liberty Mutual Insurance Co.), c/w 03-1002 (La.6/20/03), 847 So.2d 1247 (filed by McDermott).[1]

*122 DISCUSSION
Application of the 1982 Amendment to La. C.C. art. 2315
The executive officers and directors of Avondale and McDermott argue that Mrs. Landry's loss of consortium claim did not arise until Mr. Landry was diagnosed with mesothelioma, but that under our holding in Anderson v. Avondale Industries, 00-2799 (La.10/16/01), 798 So.2d 93, the 1982 amendment to La. C.C. art. 2315 providing a loss of consortium claim cannot be retroactively applied to conduct which occurred prior to 1982. Plaintiffs agree that the loss of consortium claim did not arise until 2002, but argue that Anderson does not prohibit the application of 2315. Interestingly, the manufacturing defendants argue that under the "exposure theory" adopted by this court in Austin v. Abney Mills, 01-1598 (La.9/4/02), 824 So.2d 1137, the loss of consortium claim arose at the time of exposure to asbestos, at which time our laws did not allow a claim for loss of consortium.
Thus, as an initial matter, we address the issue of when a cause of action for loss of consortium accrues. "Under Louisiana law, a cause of action accrues when a party has the right to sue." Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, 1259; Falgout v. Dealers Truck Equip. Co., 98-3150 (La.10/19/99), 748 So.2d 399. As even the plaintiffs recognize, it is well-settled that a cause of action for loss of consortium does not accrue until a plaintiff suffers the actual loss of consortium, which has been held to occur at the time an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium, service or society. William E. Crawford, Developments in the Law 1993-1994, 55 La. L.Rev. 657, 658 (1995); Coates v. Owens-Corning Fiberglas Corp., 444 So.2d 788 (La.App. 4 Cir.1984); Faraldo v. Hanover Ins. Co., 600 So.2d 81 (La.App. 4 Cir.1992); Ewing v. Armstrong World Industries, Inc., 02-918 (La.App. 3 Cir. 2/19/03), 846 So.2d 813; Abadie v. Commercial Union Ins. Co., 464 So.2d 979 (La.App. 4 Cir.1985); McDuffie v. ACandS, Inc., 00-2745 (La.App. 4 Cir. 2/14/01), 781 So.2d 623; but see Ferguson v. Burkett, 454 So.2d 413 (La.App. 3 Cir. 1984) (refusing to allow a loss of consortium claim because the acts or negligence of defendants occurred prior to the 1982 amendment). There has been no allegation that Mrs. Landry suffered a loss of consortium prior to 1982, and in fact plaintiffs assert that the loss of consortium claims did not accrue until after Raleigh Landry was diagnosed with mesothelioma on January 15, 2002. We agree, and hold that, because Mrs. Landry did not have a right to sue for loss of consortium until January of 2002, her cause of action did not accrue until that time.
In 1982, by Acts 1982, No. 202, § 1, La. C.C. art. 2315 was amended to add a cause of action for loss of consortium, as follows:
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person....
At issue is whether that article as amended in 1982 applies in this case where the negligent conduct, i.e., the exposure to asbestos, occurred prior to 1982, but the cause of action arose after that date. In Anderson, we faced a similar issue of whether former La. C.C. art. 2315.3, allowing *123 recovery of punitive damages in certain cases involving hazardous substances, applied to a wrongful death case in which the cause of action arose after the effective date of former La. C.C. art. 2315.3, but the conduct giving rise to the injuries occurred before that date. The analysis used in Anderson is also appropriate in this case.
In enacting Acts 1982, No. 202, § 1, the legislature did not express its intent with regard to its application,[2] thus we look to La. C.C. art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
"`Substantive laws,' for purposes of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or change existing ones." Anderson, supra at 97; Aucoin v. State Through Dept. of Transp. and Dev't, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62, 67. As with the law allowing for punitive damages in Anderson, the 1982 amendment to La. C.C. art. 2315 for the first time allowing the recovery for damages for loss of consortium prior to death was clearly a substantive law in that it established a new right of action. Because the amendment to La. C.C. art. 2315 was a substantive law and the legislature did not expressly provide that it should be applied retroactively, La. C.C. art. 6 requires that it be given prospective application only. See also Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 744 n. 1 (remarking about a 1980 claim for loss of consortium that "[a] right to claim damages for loss of consortium was not recognized until a 1982 amendment to [La. C.C.] art. 2315, and that amendment was not applied retroactively.")
Mrs. Landry argues that since her cause of action for loss of consortium arose *124 after the 1982 amendment allowing predeath loss of consortium claims, that amendment applies prospectively to allow her claim. However, the accrual of a cause of action during the time a law is in effect does not necessarily determine the law's application to the claim. Anderson, supra at 99. Rather, this Court has adopted the formula set out by Planiol "for identifying the only two situations in which a law operates retroactively:
[a] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity."
Anderson, supra at 97-98 (citing Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1267 (citing 1 M. Planiol, Treatise on the Civil Law, § 243 (La.St.L.Inst.Trans.1959))). "Under Planiol's first situation in which a law operates retroactively, when a intervening law creates a cause of action, and thus attaches new consequences to past events, the retroactivity event is the conduct or activity regulated." Anderson, supra at 99. Thus, as in Anderson, because the amendment to La. C.C. art. 2315 created a cause of action for loss of consortium, the application of that article to the facts of this case would be an impermissible retroactive application of the law because it would go back to the past to evaluate the conditions of the legality of the defendants' conduct, which occurred before the 1982 amendment.[3] This result was also urged by recently departed Chief Judge Byrnes in his well reasoned eight-page dissent to the denials of the writs in these cases. Landry v. Avondale, Byrnes, dissenting.

Immunity Defense
The employer defendants also argue that even if Mrs. Landry can assert her cause of action for loss of consortium, because that cause of action did not arise until January of 2002, they are immune from tort liability by virtue of La. R.S. 23:1032. The employers argue they are immune because mesothelioma was recognized as a covered occupational disease in 1975, and the executive officers and directors argue they are immune because La. R.S. 23:1032 was amended in 1976 to extend tort immunity to them.[4]
In Walls, this Court held that applying the 1976 amendment to La. R.S. 23:1032 to silicosis exposure that predated the statute, resulting in death after the effective date of the statute, did not result in an impermissible application of La. R.S. 23:1032. Therefore, we held that the plaintiffs could not assert a wrongful death action against the employers' executive officers because they were immune from suit. Crucial to our holding was a finding *125 that a wrongful death cause of action does not accrue until death, because where a new substantive law essentially extinguishes a cause of action, the date that the cause of action accrues is a crucial determining point in considering the second condition of retroactivity of Plainiol's formula, i.e., whether the law modifies or suppresses the effects of a right already acquired. We clarified earlier in this opinion that a cause of action for loss of consortium does not accrue until the plaintiff suffers an actual loss of consortium, service or society. Indeed in Walls we stated that "[a] negligence cause of action will arise only upon the happening of a wrongful act and the existence of an injury resulting in legally cognizable damages." 740 So.2d at 1269. Just as "the wrongful death action arises at the death of the victim, and compensates the beneficiaries for their injuries that occur at the moment of the victim's death and thereafter," 740 So.2d at 1270, a loss of consortium action arises at the time an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium, service, or society and compensates the beneficiaries for their injuries at that moment and thereafter. Thus, since Mrs. Landry could not have been injured until Mr. Landry's condition deteriorated to that extent, which by all accounts was well after 1976, and her cause of action for loss of consortium did not arise prior to that date, it necessarily follows that she could not have acquired a "right" in their cause of action for loss of consortium prior to 1976.
Plaintiffs argue that our holding in Walls was based on a specific finding that a wrongful death action was not a derivative action. 740 So.2d at 1274. Plaintiffs argue that derivative claims, such as loss of consortium claims, are by their very nature governed by the status of the primary victim's claim. They argue that Mr. Landry's claims are not governed by the Workers' Compensation Act under the "exposure theory" of Austin v. Abney Mills, and that therefore, the derivative loss of consortium claim is not either. They cite Walls for the proposition that "only when the primary victim's claim falls within the exclusive remedy of the worker's compensation statute are the derivative claims also barred or governed by the workers' compensation act."
In Walls, we addressed an identical argument made by the plaintiffs in that case by finding that a wrongful death action was not a derivative action.[5] In so doing, we stated that this Court had "characterized the consortium claim as derivative of a primary victim's injury in Ferrell v. Fireman's Fund Ins. Co., 96-3028, p. 2 (La.7/1/97), 696 So.2d 569, 574." 740 So.2d at 1274. In Ferrell, we were interpreting *126 the single person policy limits of an insurance policy and held that, because the loss of consortium claim was "derivative of the primary victim's injury," it was restricted to the single person policy limits of the defendant's policy. As one commentator has aptly explained, "this limitation to the single person policy limits occurs because of the construction the courts have given the relevant liability insurance policy provisions, not because the derivative nature of the loss of consortium claim makes it merely a part of a single claim or cause of action (i.e., the primary victim's)". Crawford, Developments in the Law 1993-1994, supra at 658. As further explained:
The claim for loss of consortium is almost indistinguishable from the claim for wrongful death in that both causes of action are dependent on a primary tort to another person. Nonetheless, both claims are, beyond question, causes of action separate from any claim of the primary victim. The loss of consortium and wrongful death claims are thus derivative only in the sense that the damages suffered by these claimants flow from their relationship with the primary tort victim. Neither claim, however, is the assertion of the primary victim's cause of action itself, as in the case with a survival action.
Id. We agree with Professor Crawford's conclusion that loss of consortium claims are derivative "only in the sense that the damages suffered by these claimants flow from their relationship with the primary tort victim." However, this does not mean that the loss of consortium claim is governed by the status of the primary victim's claim. A loss of consortium claim, like a wrongful death claim, clearly compensates the beneficiaries for their own injuries, separate and distinct from the victim's injuries. Both are unlike a survival action, which we stated in Taylor v. Giddens, "comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right." 618 So.2d 834 (La.1993).
Therefore, in spite of the fact that a loss of consortium claim is characterized as a derivative claim in the sense discussed above, that does not prevent the application of the holding in Walls in this case. Accordingly, we hold that because the loss of consortium claim arose after the 1976 amendment to La. R.S. 23:1032 granting tort immunity to executive officers and directors and after the 1975 amendment to La. R.S. 23:1032 to include all occupational diseases, both Avondale and McDermott, as well as the executive officer defendants, are immune from the loss of consortium claim in this case.

CONCLUSION
A claim for loss of consortium accrues at the time a plaintiff suffers an actual loss of consortium, which is the point at which an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium, service, or society. In this case, as plaintiffs allege, Mrs. Landry's loss of consortium claim accrued at the earliest in 2001 or 2002, at around the time Mr. Landry was diagnosed with mesothelioma, but the exposure that resulted in this diagnosis occurred from 1959 to 1974. Under our holding in Anderson, because a cause of action for loss of consortium did not exist under our laws until La. C.C. art. 2315 was amended in 1982, the application of that article to this case would be an impermissible retroactive application of the law because it would go back to the past to evaluate the conditions of the legality of the defendants' conduct. Therefore, Mrs. Landry cannot assert a *127 claim for pre-death loss of consortium under La. C.C. art. 2315. In addition, because Mrs. Landry's loss of consortium did not occur until 2001 or 2002, the employer defendants are immune from that claim by virtue of La. R.S. 23:1032.

DECREE
For the reasons stated herein, the judgments of the court of appeal are reversed, the exceptions of no cause of action on the loss of consortium claim are granted, Mrs. Landry's pre-death loss of consortium claims are dismissed with prejudice, and the case is remanded for further proceedings.
REVERSED AND REMANDED.
JOHNSON, Justice concurs in the result.
KNOLL, J., concurs in the result only.
CALOGERO, C.J., concurs in part and assigns reasons.
CALOGERO, Chief Justice, concurs in part.
I concur in that portion of the majority decision disallowing Ms. Landry's claim for loss of consortium. Because all of Mr. Landry's exposure to asbestos occurred between 1959 and 1974, before the legislature in 1982 amended La. Civ.Code art. 2315 to provide for loss of consortium claims, allowing her consortium claim against the employer defendants would be an impermissible retroactive application of the amendment. As I noted in my concurrence in Anderson v. Avondale Industries, Inc., 00-2799 (La.10/16/01), 798 So.2d 93, 103, with respect to punitive damages, this is not a situation wherein the legislature extinguished a cause of action before the plaintiff's claims accrued, but one wherein the legislature created a cause of action after the plaintiff suffered harm. Id. at 11, 798 So.2d at 103.
On the other hand, I believe that the majority's decision to find that the executive officers and directors are immune from liability for Ms. Landry's loss of consortium damages under La.Rev.Stat. 23:1032 is both unnecessary and confusing under the facts of this case. The majority posed the issues before us as (1) whether Ms. Landry "has a claim for pre-death loss of consortium under [La. Civ.Code] art. 2315, and, if so, (2) whether the worker's employers and executive officers and directors of the employers are immune from this claim by virtue of La. [Rev. Stat.] 23:1032." Ante, p. 120 (emphasis supplied). Therefore, by answering in the negative the first question, i.e., by finding that Ms. Landry has no cause of action for loss of consortium, the majority disposed of the case and did not have to reach the second question posed. Therefore, the majority's gratuitous finding that the executive officers and directors are immune is pure dicta. Furthermore, the majority's reasoning in this regard is confusing because its present finding that loss of consortium claims are not derivative claims, but separate claims, conflicts with the court's statements in Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, a decision in which I was not on the panel, and its former holding in Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.7/1/97), 696 So.2d 569, a decision written by the author of the majority opinion today.
ON APPLICATION FOR REHEARING ON BEHALF OF REILLY-BENTON COMPANY, INC. AND LIBERTY MUTUAL INSURANCE COMPANY
Rehearing denied.
*128 VICTORY, J., concurring in the denial of rehearing.
On page 120 of the majority opinion, we referred to Reilly-Benton Company, Inc. ("Reilly-Benton") as "manufacturing defendants." It is clear the majority did not hold that Reilly-Benton was a manufacturing defendant, but was merely alleged to be a manufacturing defendant.
NOTES
[1] This identical issue has presented itself in three recent writ applications to this Court. In Ewing v. Armstrong World Industries, Inc., 02-0918 (La.App. 3 Cir. 2/19/03), 846 So.2d 813, the court of appeal held that the loss of consortium claims were barred, holding as follows:

[T]he time of the exposure or onset of the injury causing asbestosis is not the event that determines the applicable law governing the separate loss of consortium claim, as defendants argue. Instead, it is the loss to the spouse or relative of those elements comprising consortium that is the decisive factor. The claim for loss of consortium and the impact of the 1982 amendment to La. C.C. art. 2315 should be deciphered independently from the date on which the cause of action accrued for the injured spouse. Thus, the survivors' loss did not occur until 1996 when Ewing was diagnosed with mesothelioma, well after La. Civ.Code art. 2315 was amended to add a cause of action for loss of consortium.
Defendants assert, however, that the immunity granted to executive officers by the 1976 amendment to La. R.S. 23:1032 forecloses plaintiffs' loss of consortium claim. We agree.
...
It follows that since plaintiffs' loss of consortium claims arose long after 1976, the year in which La. R.S. 23:1032 was amended, the exclusive provisions of the Workers' Compensation Act grants the defendants immunity from loss of consortium claims. Thus, the plaintiffs do not have a cause of action for loss of consortium against defendants.
This Court has not yet acted on that writ application. In both Weber v. A.P. Green Industries, 02-2593 and Weber v. Avondale Industries, 02-2594, the trial court granted summary judgment in favor of the defendants as to the plaintiffs' loss of consortium claims and the Fourth Circuit denied writs. On December 12, 2002, this Court denied plaintiffs' writ applications. Weber v. A.P. Green Industries, 02-2593 (La.12/13/02), 831 So.2d 989; Weber v. Avondale Industries, 02-2594 (La.12/13/02), 831 So.2d 990.
[2] Plaintiffs argue that the legislature has expressed its intent that the 1982 amendment to La. C.C. art. 2315 be given retroactive effect, but their reasoning is misleading and wrong. They argue that on August 15, 1999, Act 989 of 1999 became effective and re-enacted La. C.C. art. 2315 such that the entire statute be applicable to all actions pending or claims filed after its effective date of August 15, 1999. Act 989 amended La. C.C. art. 2315 to add to paragraph B the following:

[ ]Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.[ ]
La. C.C. art. 2315(B). Sections 2 and 3 of the Act provide:
Section 2. The provisions of this Act are interpretative of Civil Code Article 2315 and are intended to explain its original intent, notwithstanding the contrary interpretation given in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355 [(holding that Art. 2315 encompassed claims for medical monitoring by individuals with no demonstrable injury)], and all cases consistent therewith.
Section 3. The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date.
Act 989 of 1999 was enacted with the exclusive purpose of excluding medical monitoring from the types of damages recoverable under Art. 2315 unless said medical monitoring is directly related to a manifest physical or mental injury or disease. Clearly, the language in Sections 2 and 3 applies only to the language included in Act 989, and not the entire statute. Ewing, supra. See also Naquin v. Titan Indem. Co., 00-1585 (La.2/21/01), 779 So.2d 704. In addition, in Bourgeois II, this Court held that Act 989 could not effect a retroactive change in the substantive law even though the legislature specifically stated that Act 989 was intended to explain the original intent of Art. 2315, and even though Act 989 specifically stated that it was to be applicable to all claims existing on its effective date. Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251.
[3] We reject plaintiffs' argument that because the defendants' conduct was illegal prior to and after the 1982 amendment, application of the article does not have retroactive effect for the same reasons we rejected that argument in Anderson. As the United States Supreme Court has held "even when the conduct in question is morally reprehensible or illegal, a degree of unfairness is inherent whenever the law imposes additional burdens based on conduct that occurred in the past." Anderson, supra at 101 n. 8 (citing Landgraf v. USI Film Products, 511 U.S. 244, 284 n. 36, 114 S.Ct. 1483, 1507 n. 36, 128 L.Ed.2d 229 (1994)).
[4] McDermott argues it is immune from the loss of consortium claim because in 1976 the LWCA was amended to extend employer immunity to include mesothelioma, and, although they assert they were immune from the date the act was originally passed, they adopt 1976 as the date for the purposes of this brief because there is no question that mesothelioma is covered after that. The executive officers claim they are immune because in 1976, immunity was extended to executive officers. The manufacturing defendants have no immunity claim.
[5] In Walls, we summarized plaintiffs' argument in this regard as follows:

The plaintiffs' urge this Court to find that the wrongful death action is a derivative action "deriving from the wrongful act and injury to the victim whose eventual death results in further injury to the survivors." The plaintiffs argue that the right to recover, or the "right of action," arises with the wrongful conduct under La. C.C. art. 2315 that provides: "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." It is the "act" that causes the injury and gives rise to the right to recover damages, and the wrongful death is derivative of the victim's underlying injury. Thus the argument continues, the wrongful death plaintiff's "right of action" arises at the time of injury to the victim and is thus governed under the same law as that which governs the victim's action. The law in effect on the date of the tortious conduct applies in both the tort victim's action and the wrongful death claim because La. C.C. art. 2315 "regulates" conduct by holding people accountable for their "acts causing damage."