NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-0924

KELLY BAILEY AND
ROBERT BAILEY

VERSUS

AIG INSURANCE, ET AL.

************

APPEAL FROM THE
ALEXANDRIA CITY COURT,
PARISH OF RAPIDES, NO. 100,573
HONORABLE RICHARD E. STARLING, JR., JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED.

Wilbert J. Saucier, Jr., Inc.
A Professional Law Corporation
2220 Shreveport Highway
Pineville, LA  71360
(318) 473-4146
COUNSEL FOR PLAINTIFFS/APPELLEES:
	Kelly Bailey and Robert Bailey

Michael L. Glass
Attorney at Law
1733 White Street

**Alexandria, LA  71301**
**(318) 484-2917**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Kelly Bailey and Robert Bailey**

**Thomas R. Hightower, Jr.**
**Wade Kee**
**John Andrew Durrett**
**A Professional Law Corporation**
**1019 Lafayette Street**
**Post Office Drawer 51288**
**Lafayette, LA  70505**
**(337) 233-0555**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Shelter Mutual Insurance Company**

PETERS, J.

Shelter Mutual Insurance Company appeals a judgment of the Alexandria City Court rendered against it in favor of Kelly Bailey ($35,000.00, less a credit of $10,00.00 for sums paid by another insurer) and her husband, Robert Bailey ($10,000.00). For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

This litigation arises from an automobile accident which occurred in Alexandria, Louisiana, on August 1, 2003. In the accident, a vehicle driven by Carrie Calhoun and owned by Louis Evans struck the rear of a vehicle driven by Kelly Bailey. The Baileys brought suit in Alexandria City Court against Ms. Calhoun; Illinois National Insurance Company (Illinois National),[1] the insurer of Mr. Evans' vehicle; Shelter Mutual Insurance Company (Shelter Mutual), Ms. Calhoun's liability insurer; and State Farm Mutual Automobile Insurance Company (State Farm), the Baileys' uninsured/underinsured insurance carrier.

Trial of this matter occurred on January 25, 2006, but, before that time, the issues of liability and insurance coverage were disposed of by summary judgment. Specifically, the trial court rendered a partial summary judgment on November 23, 2005, finding Ms. Calhoun 100% at fault in causing the accident and finding that the Illinois National policy, with $10,000.00/$20,000.00 liability limits, afforded primary liability coverage; that the Shelter Mutual policy, with $50,000.00/$100,000.00 liability limits, afforded secondary liability coverage; and that the State Farm policy provided underinsured motorist coverage with policy limits of

---

[1]The original petition identified Mr. Evans' liability insurer as AIG Insurance, a/k/a American International Group, Inc. However, it is not disputed that Illinois National is the proper party defendant.

$25,000.00/$50,000.00. Additionally, before trial, the Baileys settled with Illinois National for $10,000.00 and dismissed State Farm as a party defendant. Therefore, the only defendants remaining at trial were Ms. Calhoun and Shelter Mutual.

At trial, the evidence presented consisted of the deposition testimony of Ms. Calhoun and the testimony of the plaintiffs and Dr. Gary J. Rubenstein, an Alexandria, Louisiana chiropractor. Additionally, the litigants filed a number of exhibits, including relevant insurance policies, medical bills, and records of chiropractors who had treated Mrs. Bailey before the accident of August 1, 2003. This evidentiary record establishes that there is little factual dispute surrounding the accident and subsequent events.

Mrs. Bailey did not seek medical attention immediately after the accident. Instead, she went to the emergency room of the Rapides Regional Medical Center (Rapides Regional) the next day because of severe pain generalized throughout her spine. The staff at Rapides Regional treated her complaints with a prescription for pain medication. When the pain medication did not resolve her continuing complaints, Mrs. Bailey sought additional treatment from Dr. Rubenstein.

When Dr. Rubenstein first examined Mrs. Bailey on August 25, 2003, he concluded that she suffered from a cervical, thoracic, and lumbosacral sprain with an overlying myofascial fibrositis (inflammation of the connective tissue between the muscle fiber). Based on the history presented to him and his physical findings, he found all of these conditions to have been caused by the accident of August 1, 2003. Initially, Dr. Rubenstein followed Mrs. Bailey on a biweekly basis and treated her condition primarily with spinal manipulation and heat treatments. However, Mrs. Bailey did not seek treatment from Dr. Rubenstein from December of 2003 through

2

May of 2004 because she was required to address personal problems within her family that made regular treatment next to impossible.[2]  When she informed Dr. Rubenstein of her situation, he gave her instructions for home therapy.

When Mrs. Bailey returned to Dr. Rubenstein's care on May 28, 2004, her original complaints had neither improved nor worsened since she ceased treatment in December of 2003.  However, by this time she had developed serious headaches on a regular basis.  The doctor renewed his prior treatments and continued to treat her until October of 2005.  At that time, Mrs. Bailey was required to forgo her treatments because of her need for ovarian cystectomy surgery.  The surgery was performed in November of 2005, and she ceased care with Dr. Rubenstein until released by her surgeon in January of 2006.

Mrs. Bailey returned to Dr. Rubenstein's care on January 6, 2006, and her condition had not changed from October of 2005.  Dr. Rubenstein renewed his treatment of Mrs. Bailey, and she was still under his care at the time of trial.  With regard to long-term prognosis, Dr. Rubenstein was of the opinion that Mrs. Bailey's problems with the inflammation of the fascicular connective tissue had become chronic.  Thus, he opined that, with this permanent aspect of her injuries, her overall prognosis was guarded and the best one could do was to treat the symptoms from time to time rather than totally remediating those symptoms.  Dr. Rubenstein's charges for his services through trial were $5,192.00.  He believed that Mrs. Bailey would require annual care of a chiropractor for the remainder of her life at a cost of from $400.00 to $500.00 per year.

---

[2]Mrs. Bailey testified that in late 2003 her father was diagnosed with terminal cancer and her stepdaughter was involved in a serious automobile accident.  From December of 2003 until May of 2004, Mrs. Bailey's time was spent caring for the needs of her mother and father as well as her stepdaughter and her stepdaughter's infant.

Mrs. Bailey and her husband owned and operated Omni Services, a business which sells dry cleaning and laundry equipment to commercial businesses. Prior to the accident, Mrs. Bailey's basic obligation in that business was the operation of the business office. Mrs. Bailey's duties in performing that task included, among other activities, lifting and stacking file boxes and operating a fork lift. Additionally, prior to the accident, she bore the primary responsibility of maintaining the family home and enjoyed bowling, riding horses, and even jet skiing. Mrs. Bailey's uncontradicted testimony was that she had to drastically curtail all of those activities after the accident.

According to her husband, Mrs. Bailey was not a "quitter," and she did her best to return to a normal life after the accident. However, it became necessary for Mr. Bailey to take over the basic obligations of the office as well as the home. In fact, often he would find her lying in their bed and crying because of her pain. Mr. Bailey testified that his wife's injuries resulted in a significant negative change in their marital relationship, including their sex life.

Mrs. Bailey had a history of chiropractic treatment for various ailments,[3] and many of the prior treatment records were introduced in this trial. Included within her past history was a 1980 severe head injury sustained in an accident as well as a twisting injury approximately four months prior to the accident at issue. Dr. Rubenstein reviewed the chiropractic records of prior treatment and found nothing in those records that caused him to conclude that Mrs. Bailey's current complaints were caused by anything other than the August 1, 2003 automobile accident. In other

---

[3]According to Dr. Rubenstein, Mrs. Bailey's family believed that a chiropractor could help with the common cold or a stomach ache and, therefore, used chiropractic care as the primary source of medical care.

4

words, he concluded that, prior to August 1, 2003, she had fully recovered from any injuries for which she had previously sought treatment.

After completion of the evidence, the trial court issued oral reasons for judgment in which it concluded that the combination of Mrs. Bailey's past, present, and future general damages and medical expenses exceeded the jurisdictional limit of the Alexandria City Court. Therefore, it awarded Mrs. Bailey the jurisdictional limit of $35,000.00, subject to a $10,000.00 credit to Shelter Mutual for the prior payment by Illinois National. The trial court then awarded Mr. Bailey $10,000.00 as loss of consortium damages. The trial court executed a written judgment on February 24, 2006, and Shelter Mutual perfected this appeal.

## OPINION

### *Assignment of Error Number One*

In its first assignment of error, Shelter Mutual raises two issues. It first asserts that the trial court erred in treating the claims of Mr. and Mrs. Bailey as separate and distinct causes of action. Next, it argues that it is entitled to an offset of $10,000.00 for the settlement with Illinois National.

With regard to the first issue, Shelter Mutual argues that the trial court circumvented the $35,000.00 jurisdictional limit of the Alexandria City Court as established in former La.Code Civ.P. art. 4843(K)[4] by treating the claims as separate and awarding a total judgment of $45,000.00. In making this argument, Shelter Mutual relies primarily on the holding in *Ferrell v. Fireman's Fund Insurance Co.*, 96-3028 (La. 7/1/97), 696 So.2d 569. The supreme court couched the issue in that

---

[4]We note that La.Code Civ.P. art. 4843(K) was in effect at all pertinent times hereto, but La.Code Civ.P. art. 4843 has since been amended by 2006 La. Acts No. 681, § 1. The amendment does not affect our disposition of this matter.

5

case as follows:

> At issue is whether Fireman's Fund is liable to Mrs. Ferrell as a separately injured person out of the per accident bodily injury limits of its policy, or whether Mrs. Ferrell's loss of consortium claim must be satisfied out of the per person bodily injury limits of the policy.

*Id.* at 573.

In resolving this issue, the supreme court concluded that "Mrs. Ferrell's claim for loss of consortium is derivative of her husband's injuries. As such, Mrs. Ferrell's award for loss of consortium can only be satisfied out of the per person bodily injury limits of the Fireman's Fund policy." *Id.* at 577.

While we acknowledge the decision in *Ferrell*, we also note that it was explained by the supreme court in *Landry v. Avondale Industries, Inc.*, 03-0179, 03-0993, 03-1002, pp. 9-10 (La. 12/3/03), 864 So.2d 117, 125-26, as follows:

> In *Ferrell*, we were interpreting the single person policy limits of an insurance policy and held that, because the loss of consortium claim was "derivative of the primary victim's injury," it was restricted to the single person policy limits of the defendant's policy. As one commentator has aptly explained, "this limitation to the single person policy limits occurs because of the construction the courts have given the relevant liability insurance policy provisions, not because the derivative nature of the loss of consortium claim makes it merely a part of a single claim or cause of action (i.e., the primary victim's)." Crawford, *Developments in the Law 1993-1994, supra* at 658. As further explained:
>
>> The claim for loss of consortium is almost indistinguishable from the claim for wrongful death in that both causes of action are dependent on a primary tort to another person. Nonetheless, both claims are, beyond question, causes of action separate from any claim of the primary victim. The loss of consortium and wrongful death claims are thus derivative only in the sense that the damages suffered by these claimants flow from their relationship with the primary tort victim. Neither claim, however, is the assertion of the primary victim's cause of action itself, as in the case with a survival action.
>
> *Id.* We agree with Professor Crawford's conclusion that loss of consortium claims are derivative "only in the sense that the damages suffered by these claimants flow from their relationship with the primary tort victim." However, this does not mean that the loss of consortium

6

claim is governed by the status of the primary victim's claim. A loss of consortium claim, like a wrongful death claim, clearly compensates the beneficiaries for their own injuries, separate and distinct from the victim's injuries. Both are unlike a survival action, which we stated in *Taylor v. Giddens*, "comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right." 618 So.2d 834[, 840] (La.1993).

Applying the rationale of the decision in *Landry*, we find no error in the trial court's recognition of Mr. Bailey's claim as separate and distinct from that of his wife. Therefore, we find no merit in the first issues raised in Shelter Mutual's first assignment of error.

We find no merit in Shelter Mutual's second issue raised in the first assignment of error as well. In fact, the record is clear that the trial court did give Shelter Mutual credit for the $10,000.00 payment made by Illinois National.

### Assignment of Error Number Two

Shelter Mutual's second assignment of error reads as follows:

The city court's *award* of $97,242.00 in damages is manifestly erroneous and an abuse of discretion, particularly in light of the Alexandria City Court jurisdictional maximum of $35,000.00

a. The city court clearly abused its discretion in *awarding* Mrs. Baily $70,000.00 in general damages for essentially a four month aggravation of a chronic pre-existing lumbar soft tissue injury. Further, the *award* of $17,242.00 in special damages was likewise an abuse of discretion.

b. The city court loss of consortium award to Mr. Bailey in the amount of $10,000.00 is clearly excessive and is manifestly erroneous and, should, therefore be reversed.

c. The city court committed legal error by failing to apply the underlying policy proceeds of $10,000.00/$20,000.00 as an offset and credit, further reducing the maximum amount available under the jurisdictional limit to $25,000.00.

d. Alternatively and for the sake of argument only, assuming

7

Plaintiffs' claims are, as the city court found, separate and distinct, the city court committed legal error by applying the underlying policy offset/credit to Mrs. Bailey's claim only, and not to Mr. Bailey's claim. Following the reasoning of the city court and considering that the Illinois National policy had liability limits of $10,000.00/$20,000.00, both claims should have been reduced by $10,000.00, respectively. Accordingly, the net judgment would have been $25,000.00 to Mrs. Bailey and $0.00 to Mr. Bailey.

(Emphasis added.)

In evaluating subsection (a) of this assignment of error, we first note that Shelter Mutual does not assert that the $35,000.00 award to Mrs. Bailey is excessive. Instead, it argues that the trial court erred in awarding her $70,000.00 in general damages and $17,242.00 in special damages. This latter argument is a misstatement of the record. The trial court awarded Mrs. Bailey $35,000.00 for her damages, and nothing more. The fact that the trial court concluded that her damages exceeded its jurisdictional limit did not constitute an *award* of that amount. Therefore, we find no merit in subsection (a) of this assignment of error. Based on the same rationale, we find no merit in the argument raised by subsection (c) of this assignment of error. The trial court clearly gave Shelter Mutual credit for Illinois National's settlement funds.

In subsection (b) of this assignment of error, Shelter Mutual asserts that the trial court abused its discretion in awarding Mr. Bailey $10,000.00 for his loss of consortium. In evaluating this issue, we note that La.Civ.Code art. 2324.1 provides that, "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." The discretion vested in the judge or jury has been described by the supreme court as "'great,' and even vast, so that an appellate court should rarely disturb an award of general damages."

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

This court has previously stated that "[l]oss of consortium contemplates something more than a loss of general overall happiness, but includes seven components: love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and felicity." *Detraz v. Hartford Accident & Indemnity Co.*, 94-708, p. 9 (La.App. 3 Cir. 12/7/94), 647 So.2d 576, 581. In this case, the trial court concluded as fact that Mrs. Bailey sustained the injuries described by Dr. Rubenstein in the August 1, 2003 accident, that the effects of those injuries were permanent, and that she would require future medical treatment as described by Dr. Rubenstein. Furthermore, the trial court found Mrs. Bailey to be a credible witness and accepted her testimony concerning how her injuries had changed her life. Because of these injuries, Mrs. Bailey was unable to perform many of the activities she had previously performed, and Mr. Bailey had to take over these responsibilities. These activities included those of both the home and the community-owned business, and the trial court concluded that Mr. Bailey would face these new responsibilities for the rest of his life.[5] While the trial court did not specifically address the subject, it is obvious from the reasons for judgment that it accepted Mr. Bailey's testimony concerning the effect the accident had on the sexual relationship between his wife and himself. All of these are factual findings which may not be disturbed absent manifest error. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989). Finding no manifest error in these factual findings, we find that the record supports that Mr. Bailey's damages were more than a loss of general overall

---

[5]Mr. Bailey was forty-two at the time of the accident, and the trial court concluded that his life expectancy exceeded thirty years.

9

happiness, and we find no abuse of the trial court's vast discretion in awarding him $10,000.00 for loss of consortium. Therefore, we find no merit in subsection (b) of this assignment of error.

We also find no merit in Shelter Mutual's alternative argument set forth in subsection (d) of this assignment of error. Illinois National paid its per person policy limit of $10,000.00 to settle its liability to the Baileys. As previously discussed, the Baileys could recover only the per person policy limit because, for liability insurance contract purposes, the loss of consortium claim is derivative of the primary victim's injury. *Landry*, 864 So.2d 117; *Ferrell*, 696 So.2d 569. It matters not whether the trial court gave the offset to the award to Mr. Bailey or Mrs. Bailey—Shelter Mutual received full benefit of the offset.

### *Assignment of Error Number Three*

In this assignment of error, Shelter Mutual asserts that the trial court award of $97,242.00 exceeds the jurisdictional amount of the Alexandria City Court and, therefore, is an absolute nullity. Again, we recognize that the trial court did not award a judgment of $97,242.00. The judgment awarded falls clearly within the jurisdictional amount provided for in former La.Code Civ.P. art. 4843(K), and this assignment has no merit.

### DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to Shelter Mutual Insurance Company.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.