696 So.2d 569 (1997)
Reva Spiegal, wife of/and Edward FERRELL
v.
FIREMAN'S FUND INSURANCE CO., et al.
No. 96-C-3028.
Supreme Court of Louisiana.
July 1, 1997.
*570 VICTORY, Justice.
We granted certiorari in this personal injury action arising out of a multi-vehicle accident for two reasons: (1) to determine whether Fireman's Fund is liable for Mrs. Ferrell's loss of consortium out of the per accident bodily injury limits of its policy, or whether loss of consortium is derivative of her husband's injuries and therefore must be satisfied out of the per person bodily injury limits of the policy, and (2) to review the court of appeal's decision that Fireman's Fund is liable for interest on the amount of damages awarded to the Ferrells in excess of its policy limits.
For the reasons that follow, we hold that Mrs. Ferrell's claim for loss of consortium is derivative of her husband's injuries. As such, Mrs. Ferrell's award for loss of consortium must be satisfied out of the per person bodily injury limits of the Fireman's Fund policy, assuming the policy limits have not been exhausted by Mr. Ferrell's damages. In addition, we hold that, because Patrice Brown, Fireman's Fund's insured, was never served with the Ferrells' petition and likewise was never cast in judgment, Fireman's Fund is not liable to the Ferrells for interest on damages in excess of its policy limits pursuant to its supplementary payment provision.

FACTS AND PROCEDURAL HISTORY
The facts as determined by this Court in our previous opinion, Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742 are as follows:
The multiple-vehicle accident in this case occurred on August 12, 1985 on I-10 East at the Read Road overpass in the early evening hours at dusk. The weather was rainy, with overcast skies, and visibility was poor, except for the well-lit overpass where the accident occurred.
Five vehicles were involved in this accidenta Mazda owned by Patrice Brown, a Chevrolet driven by Kimmie Cranford, a Ford LTD driven by police officer Reid Noble, a Toyota driven by Edward Ferrell, and a Cadillac driven by Antoine Paudice. A sixth vehicle, not described, with an unknown driver, allegedly was also involved.
Patrice Brown was driving home from work when she lost control of her Mazda on the incline of the I-10 overpass at Read Road. She claims the steering mechanism failed; other witnesses said the car "hydroplaned." She struck the left hand guard rail, spun around, and skidded in the left lane of I-10. She claims she came to a stop adjacent to the guard rail, out of the left lane, in the safety accident lane, facing oncoming traffic. The precise position of Brown's vehicle following the spin is in dispute.
Kimmie Crawford was traveling on I-10 behind Brown when he observed Brown's car swerve, strike the left hand rail, spin around and come to a stop facing oncoming traffic. Cranford says the Mazda stopped in the left hand lane, blocking traffic, not in the safety lane. He stopped his car in the left hand lane behind her car, put on his emergency signal, got out, and went to assist Brown. He helped her push her car from the left lane to the emergency lane before a police car drove up and stopped behind his car.
Officer Reid Noble was driving her Ford LTD unmarked police car on I-10 when she observed traffic congestion on the Read Road overpass. She slowed down *571 and stayed in the left hand lane when she observed Brown's Mazda stopped in the emergency lane facing oncoming traffic. Cranford's Chevrolet was stopped behind the Mazda, with the emergency lights on. She pulled her Ford LTD to a stop behind Cranford's Chevrolet, turned her emergency flashers on, and radioed headquarters that she was stopping to investigate an accident. All three vehicles were on the elevated portion of the overpass, and at least Cranford and Noble had their flashers on. When Noble found there was no personal injury, she told Brown and Cranford to move their vehicles if possible, so as not to cause an accident, and went back to her vehicle to report the situation. At that moment, an unidentified "phantom" vehicle swerved to avoid her LTD, skidded in the right lane guard rail, and continued down I-10.
Edward Ferrell was driving his Toyota with his wife as a passenger. While driving on I-10, he was behind a vehicle in the left hand lane, when that vehicle suddenly swerved to the right. When it swerved, he saw Noble's police car in front of him, but could not avoid hitting it. When he hit the police car, it was knocked forward into Cranford's Chevrolet. Ferrell's Toyota came to rest in the middle lane of I-10, where it was struck by Paudice's Cadillac.
Antoine Paudice was driving his Cadillac on I-10. When he saw Ferrell's Toyota stopped, blocking the middle lane of traffic, he could not avoid hitting it. Paudice's Cadillac smashed into Ferrell's Toyota. Paudice was injured, but not as severely as the Ferrells.
As a result of the accidents, two lawsuits were filed. The Ferrells filed suit against the drivers and insurers of the other five vehicles; Mr. Ferrell for injuries he suffered in the accident and Mrs. Ferrell for her loss of consortium resulting from Mr. Ferrell's injuries. Antoine Paudice also filed suit against the drivers and insurers of the other vehicles, including the Ferrells and their insurer.[1] Prior to trial, the Ferrells settled their claims against Paudice, Noble and the City of New Orleans. Remaining for trial were the Ferrells' claims against Brown and her insurer, Fireman's Fund, Cranford and his insurer, Liberty Mutual, and Enterprise Leasing, the company that leased the car to Cranford.
After trial on the merits, a jury determined that neither Brown nor Crawford were negligent, but that Officer Noble, Paudice and the phantom vehicle were negligent and caused the accident. In addition, the jury found although Mr. Ferrell was negligent, his negligence did not cause the accident. Fault was apportioned as follows: 0% to Brown and Cranford; 20% to Officer Noble; 30% to the phantom vehicle; 30% to Ferrell; and 20% to Paudice. The court therefore dismissed with prejudice the claims of Antoine Paudice and the Ferrells as to defendants Cranford and his insurer, Liberty Mutual Insurance Company, Enterprise Leasing Company, and Fireman's Fund Insurance Company. The Fourth Circuit Court of Appeal affirmed. Ferrell v. Fireman's Fund Ins. Co., 92-2116 (La.App. 4th Cir. 2/25/94); 635 So.2d 1152.
We granted certiorari, Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.9/16/94); 642 So.2d 177, and reversed the jury's determination that Ms. Brown was not at fault. Furthermore, we found that the trial court had committed legal error by entering judgment on the jury's inconsistent responses to interrogatories, an error we determined may have interdicted the fact-finding process.[2] *572 Thus, we remanded the case to the court of appeal, for it to perform a de novo review, with the instruction that it should first determine whether Edward Ferrell was guilty of any negligence that was a cause of the accident and, if so, assign him the proper percentage of fault. After doing so, the court of appeal was to recalculate the respective percentages of fault of the phantom driver, Officer Noble, and Paudice and enter an appropriate judgment. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742.
On remand, the court of appeal determined that Edward Ferrell was negligent and his negligence was a legal cause of the accident. It then recalculated the percentages of fault as follows: 50% to Ms. Brown, 25% to Edward Ferrell and 25% to Mr. Paudice. No fault was assigned to the phantom driver or Officer Noble. Edward Ferrell was awarded $489,098.06 in damages and Mrs. Ferrell was awarded $25,000 for her loss of consortium.
In addition, the court of appeal determined that Fireman's Fund was not only liable for legal interest on its policy limits of 10/20 from the date of judicial demand until paid, but, pursuant to the supplementary payment provision of its policy, it was also liable for legal interest on the entire amount in excess of its policy limits from June 2, 1992, the date judgment was rendered in the trial court, until payment was made. Notably absent, however, from the court of appeal's decision was discussion concerning the issue of whether Fireman's Fund was liable to Mrs. Ferrell for her loss of consortium out of the per accident bodily injury limits of its policy, or whether loss of consortium was derivative of her husband's injuries and thus had to be satisfied out of the per person bodily injury limits of the policy. Ferrell v. Fireman's Fund Ins. Co., 92-2116 (La.App. 4th Cir. 7/31/96); 680 So.2d 690, remanded by 94-1252 (La.2/20/95); 650 So.2d 742.
Fireman's Fund was granted limited rehearing to consider the date from which it was to pay legal interest on the amount of damages awarded to the Ferrells in excess of its policy limits. Fireman's Fund argued that because the trial court judgment of June 2, 1992 was entered in its favor, based on the jury's finding that its insured was free of fault, interest could only be due on the excess judgment from rendition of judgment in the court of appeal on remand. The court of appeal agreed that it had erred in awarding interest from the date of the trial court judgment, but disagreed that the correct date was the date of its opinion on remand. Rather, the court of appeal determined:
On February 20, 1995, the Supreme Court determined that Fireman's Fund insured was negligent and caused the accident in which the plaintiff was injured. Ferrell v. Fireman's Fund Ins. Co., 94-1252, pp. 6-7 (La.2/20/95), 650 So.2d 742, 747. The Supreme Court remanded the case to this court solely to apportion fault and to determine damages. The Supreme Court's judgment was a final, unappealable determination that Fireman's Fund insured was at fault. Following the Supreme Court's decision, Fireman's Fund could have avoided the supplementary payments provision by tendering its policy limits. See Dobson v. Aetna Casualty & Surety Co., 484 So.2d 976, 984-985 (La.App. 3d Cir.1986). It chose not to do so. Therefore, it is responsible for interest on that amount in excess of its remaining policy limits of $17,500 from February 20, 1995, the date of the Supreme Court's decision.
Ferrell v. Fireman's Fund Ins. Co., 92-2116 (La.App. 4th Cir. 7/31/96)(on rehearing), 680 So.2d 690, remanded by 94-1252 (La.2/20/95); 650 So.2d 742.[3] We granted certiorari to *573 review the correctness of this decision. Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.2/21/97); 688 So.2d 534.

DISCUSSION
It is well settled in Louisiana that a cause of action exists for loss of consortium[4]. Specifically, La. Civ.Code art. 2315 provides:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. (emphasis added).
Pursuant to this article, Mrs. Ferrell filed suit for her loss of consortium, service and society resulting from the injuries suffered by her husband. At issue is whether Fireman's Fund is liable to Mrs. Ferrell as a separately injured person out of the per accident bodily injury limits of its policy, or whether Mrs. Ferrell's loss of consortium claim must be satisfied out of the per person bodily injury limits of the policy.
Fireman's Fund couches the issue in terms of whether Mrs. Ferrell's claim is derivative of her husband's injuries. Citing to several courts of appeal decisions, Fireman's Fund contends that because Mrs. Ferrell's loss of consortium claim is derivative of her husband's claim (the primary victim), she is only entitled to recover from the per person bodily injury limits of the Fireman's Fund policy.
In support of its position, Fireman's Fund relies on Shepard v. State Farm Mut. Auto. Ins. Co., 545 So.2d 624 (La.App. 4th Cir.), writ denied, 550 So.2d 627, 628 (La.1989) and Sharff v. Ohio Cas. Ins. Co., 584 So.2d 1223 (La.App. 2d Cir.), writ denied 589 So.2d 1055 (La.1991). In Shepard, the parents of a severely injured son brought suit for their loss of consortium arising from their son's injuries. Due to the severity of the child's injuries, however, the amount of his damages greatly exceeded the per person bodily injury policy limit contained in the tortfeasor's insurance policy. After examining the opinions expressed by the First and Fifth Circuit Courts of Appeal in Albin v. State Farm Mut. Auto. Ins. Co., 498 So.2d 171 (La.App. 1st Cir.), writ denied 498 So.2d 1088 (La. 1986)[5] and Carroll v. State Farm Insurance Company, 519 So.2d 265 (La.App. 5th Cir.), writ denied, 520 So.2d 756 (La.1988)[6], the *574 fourth circuit concluded that loss of consortium was a covered claim, but only up to the policy limits of the per person bodily injury limit:
Louisiana has established a cause of action for loss of consortium, service and society. La. C.C.[sic] art. 2315. The modern definition of loss of consortium was set out in Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424, 435 (1981) as follows:
a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest or personality). Because loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence, it may be regarded as a secondary layer of tort liability to the primary victim.
As the Berger opinion suggests, a loss of consortium action is a derivative claim of the primary victim's injuries. This reasoning is applicable to the case before this court. The derivative claim does not come into existence until someone else is injured. Thus, the parents of Gregory Shepard did not suffer a harm to their relational interest until Gregory suffered his injuries. However, because the right of action in the loss of consortium claim is derived from Gregory's injuries, recovery is restricted to the per person limits. Therefore, if the injured party exhausts the per person limits, the derivative claim is extinguished.
Shepard, 545 So.2d at 629. See also, Sandoz v. State Farm Mut. Auto. Ins. Co., 620 So.2d 441 (La.App. 3d Cir.1993).
In Sharff, the Second Circuit Court of Appeal was presented for the first time with the issue of whether a loss of consortium claim was derivative and thus had to be satisfied out of the per person limits of an insurance policy. After an automobile accident left Mr. Sharff a quadriplegic, his wife sued for her loss of consortium. While noting that no clear result could be reached by examining the jurisprudence from other jurisdictions, the court chose "to follow the emerging rule in the Louisiana jurisprudence regarding this issue." Sharff, 584 So.2d at 1225. Citing to Albin, Carroll and Shepard, the court stated:
The reasoning employed by our brethren in the First, Fourth, and Fifth Circuit Courts of Appeal is persuasive in this case. Therefore, we find that Mrs. Sharff's claim for loss of consortium is derivative, arising from her son's claim for bodily injury and therefore the single per person limit governs both the son's claim for personal injuries and the mother's claim for loss of consortium.
Sharff, 584 So.2d at 1226.
The Ferrells, however, contend that this Court's decision in Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94); 632 So.2d 736, provides the proper framework for analyzing whether Mrs. Ferrell's loss of consortium claim is to be satisfied out of the per person or per accident limits of the Fireman's Fund policy.[7]
In Crabtree, Mr. Crabtree was riding a motorcycle while his wife followed him in her automobile. Soon thereafter, an oncoming *575 vehicle crossed the center line and struck Mr. Crabtree head-on. Crabtree's wife, who witnessed the accident from her vehicle, rushed to her husband only to discover that one of his legs had been nearly severed below the knee. In addition to Mr. Crabtree's suit for his own physical injuries, Crabtree's wife sought damages for mental anguish and her loss of consortium.[8] The issue, as framed by this Court, was "whether a wife's mental anguish suffered upon witnessing an injury to her husband constitutes a separate bodily injury under an automobile insurance policy thereby entitling the wife to her own per person policy limit subject to the aggregate per accident limit." Crabtree, 632 So.2d at 737, 738.
Like Fireman's Fund in the instant case, State Farm characterized the issue in terms of whether Mrs. Crabtree's Lejeune[9] claim was derivative of Mr. Crabtree's injuries. Analogizing Mrs. Crabtree's mental anguish claim to the loss of consortium claims in Shepard and Sharff, State Farm reasoned that because Mrs. Crabtree's injury was derivative by its nature, the claim fell under the per person limits in the policy, regardless of the language of the policy.
We rejected this argument, however, and determined that it was unnecessary to decide whether the Lejeune claim was derivative of the tort victim's liability. Instead, we determined that the question of whether Mrs. Crabtree's mental anguish constituted "bodily injury" as defined in the policy was determinative of whether "bodily injury to one person" encompassed Mrs. Crabtree's mental anguish claim.
The policy at issue in Crabtree read, in pertinent part, as follows:
The amount of bodily injury liability coverage is shown on the declarations page under "Limits of LiabilityCoverage A-Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
Crabtree, 632 So.2d at 739. In addition, "Bodily Injury" was defined in the policy as "bodily injury to a person and sickness, disease or death which results from it." According to the construction urged by State Farm, "bodily injury to one person" included "all injury, including bodily injury, and damages to others resulting from this bodily injury." We disagreed, noting that such an interpretation would lead to anomalous results.[10] Thus, we stated:
Construing the policy provisions in light of each other so that each is given the meaning suggested by the policy as a whole, we conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies.
*576 Crabtree, 632 So.2d at 742. We then determined that mental anguish was "bodily injury" as contemplated in the Fireman's Fund policy.
Having thoroughly reviewed these decisions, we agree with the courts of appeal and hold as a matter of law that loss of consortium claims are derivative of the primary victim's injuries. However, because an insurance policy is a contract between the parties, and the parties are free to contract regarding the extent of coverage contained therein, reference must be made to the language of the policy to determine the extent of coverage.
The Fireman's Fund Policy at issue provides, in pertinent part:
Part A Liability Coverage
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.
Limit of Liability
The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident....
We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.
The amount of coverage is provided appears the first page of the policy and is noted as follows:
 Cov. Limits
 BI 10/20M
Upon examination of the language of the policy, we hold that damages for loss of consortium are covered under the policy provision providing coverage for "damages for bodily injury for which any covered person becomes legally responsible because of an auto accident." Fireman's Fund, as the insurer, is legally responsible for the damages resulting from loss of consortium pursuant to C.C. art. 2315. Unlike Crabtree, however, where we determined that mental anguish constituted a separate "bodily injury", we do not believe that loss of consortium is covered as a separate bodily injury under the per accident bodily injury limits of the policy. Coverage for loss of consortium exists solely under the per person bodily injury limits of the policy because loss of consortium is derivative of the primary victims injuries and not a separate bodily injury. Therefore, we conclude Fireman's Fund's policy, which has limits of 10/20, only provides coverage of $10,000, not $20,000, for the Ferrells' claims.[11]
Also at issue is Fireman's Fund's interest liability for the amount of damages awarded to the Ferrells in excess of its policy limits. Pursuant to La. R.S. 13:4203[12], all liability and UM insurers owe interest on their policy limits from the date of judicial demand. Martin v. Champion Ins. Co., 95-0030 (La.6/30/95); 656 So.2d 991; see also Soprano v. State Farm Mut. Auto. Ins. Co., 246 La. 524, 165 So.2d 308 (La.1964). Thus, Fireman's Fund owes legal interest on its policy limits from the date of judicial demand.
In addition to this statutory obligation, the Ferrells argue that Fireman's Fund also owes interest for the amount of damages awarded to the Ferrells in excess of Fireman's Fund's policy limits. Fireman's Fund, however, contends that because no judgment has been rendered against it or its insured, it cannot be liable for interest on the amount of damages in excess of its policy limits pursuant to its supplementary payment provisions. We agree.
*577 Fireman's Fund supplementary payment provision provides that:
In addition to our limit of liability, we will pay on behalf of a covered person:
* * * * * *
Interest accruing after a judgment is entered in any suit we defend.
Fireman's Fund can only be liable for interest in two ways: (1) for interest on its policy limits from the date of judicial demand. Martin, 656 So.2d 991, and (2) for interest under its supplementary payment provision if a judgment is entered against its insured. The record shows that Patrice Brown, Fireman's Fund's insured, was never served with the Ferrells' petition. As a result, Brown was never cast in judgment and cannot be cast in judgment. Therefore, because Brown cannot be cast in judgment, Fireman's Fund cannot be liable for interest on any amount in excess of its policy limits under its supplementary payment provision. Thus, we reverse the court of appeal's decision on remand holding Fireman's Fund liable for interest on the amount of damages in excess of its policy limits.[13]

CONCLUSION
For the foregoing reasons, we hold that Mrs. Ferrell's claim for loss of consortium is derivative of her husband's injuries. As such, Mrs. Ferrell's award for loss of consortium can only be satisfied out of the per person bodily injury limits of the Fireman's Fund policy. In addition, because Patrice Brown was never served with the Ferrells' petition, and thus cannot be cast in judgment, we hold that Fireman's Fund is not liable for interest on damages in excess of its policy limits under its supplementary payment provision.

DECREE
The decision of the court of appeal is reversed and set aside insofar as it decrees that Fireman's Fund is liable on its policy limits for any amount in excess of $7,500 and for interest on the amount of damages awarded in excess of its policy limits. This case is remanded to the trial court, per the opinion of the court of appeal on remand, for entry of judgment, as modified herein.
MARCUS, J., not on panel. Rule IV, Part 2, Sec. 3.
NOTES
[1] Prior to trial, Antoine Paudice settled with and released his claims against Edward Ferrell, Reid Noble, the City of New Orleans, and their respective insurers. After trial on the merits, the jury determined that defendants were not liable. Subsequently, Mr. Paudice failed to appeal. Therefore, the jury's verdict is final as it applies to Mr. Paudice.
[2] Regarding this issue, we stated:

La. C.C.P. art. 1812(C) directs the jury to attribute a percentage of fault to a party only after it has determined that such party is negligent and that this negligence was a legal or proximate cause of the accident. However, the jury in this case found that Edward Ferrell was negligent and 30% at fault in the accident, but that his negligence was not a legal or proximate cause of the accident. La. C.C.P. Art. 1813(E) mandates that when jury answers are inconsistent, the court shall not direct the entry of judgment, but may return the jury for further consideration, or may order a new trial. See, Daigle v. White, 544 So.2d 1260 (La.App. 4th Cir. 1989). The trial court in the present case followed neither prescribed course but entered a judgment on the verdict. Ferrell, 650 So.2d at 747.
[3] In holding that Fireman's Fund was liable for interest in excess of its "remaining policy limits of $17,500", the court of appeal, in effect, ruled that Fireman's Fund was liable to Mrs. Ferrell for her loss of consortium out of the per accident limits of its policy (had it not, the only coverage available to the Ferrells would have been the remaining $7,500 of Fireman's Fund's $10,000 per person policy limits (which itself implies a ruling by the court of appeal that Fireman's Fund was entitled to a credit for the $2,500 it paid to the Ferrells' UM carrier, Allstate)).
[4] The compensable elements of a claim for loss of consortium of a spouse include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity. See, Choyce v. Sisters of Incarnate Word, 642 So.2d 287 (La.App. 2d Cir.), rehearing denied, writ denied 647 So.2d 1119 (La.1994).
[5] In Albin, plaintiff's wife sued the tortfeasor's liability insurer for loss of consortium resulting from injuries sustained by her husband in an automobile accident. After confirming that Mrs. Albin did have a right of action against both the tortfeasor and his insurer for her loss of consortium, the court looked to the language of the tortfeasor's insurance policy to determine if coverage existed for her loss of consortium claim. The State Farm Policy at issue stated that liability under the policy was limited to $10,000 "for all damages due to bodily injury to one person" (the per person limit) and $20,000 "for all damages due to bodily injury to two or more persons in the same accident" (the per accident limit). Albin, 498 So.2d at 173. The court concluded that because Mr. Albin's settlement exhausted the per person limit, Mrs. Albin could only recover under the per accident limit if she suffered "bodily injury" in the accident. Determining that loss of consortium was not bodily injury, the court stated:

We do not believe the term "bodily injury," in its general and popular use, includes purely emotional injuries, especially where there is neither physical trauma nor a physical manifestation of the injury.
Albin, 498 So.2d at 173
[6] In Carroll, Mr. Carroll filed suit for loss of consortium resulting from injuries sustained by his wife in an automobile accident. In addition, Mr. Carroll alleged that he was covered by the policy as a second person sustaining bodily injury as a result of Mrs. Carroll's accident because he was forced to take over the household chores which caused him to aggravate a previously existing back injury. The State Farm policy at issue read as follows:

Limits of Liability
The amount of coverage is shown on the declarations page under "Limits of LiabilityUEach Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. Under "Each Accident" is the total amount of coverage for all damages due to bodily injury to two or more persons in the same accident.
Carroll, 519 So.2d at 266.
Furthermore, the definitions section of the policy defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." Carroll, 519 So.2d at 266. Mr. Carroll relied on Albin, stating that the inference from the Albin decision was that loss of consortium was recoverable as a separate injury if there were physical manifestations of injury. After examining Albin, and noting that no Louisiana Supreme Court case had allowed recovery against and insurer for bodily injury as a second person when that person was not involved in the accident, the court concluded that the limitation in the policy did not disallow claims for loss of consortium, but recovery had to come from the per person limit of the policy.
[7] Fireman's Fund also cites Crabtree as support for its position. Fireman's Fund argues that this Court recognized that Louisiana Appellate Courts have uniformly held that because a loss of consortium claim is derivative of the primary injured victim, the only available insurance for both claims in the single per person bodily injury limit.
[8] Regarding Mrs. Crabtree's loss of consortium claim, the court noted:

In accordance with the stipulations, State Farm tendered into the registry of the court the sum of $27,604.17, representing its single bodily injury policy limits plus accrued legal interest. Both parties agreed this amount was to be applied to Stephen Crabtree's personal injuries and Debra Crabtree's loss of consortium claim. Crabtree, 632 So.2d at 738.
[9] See, Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
[10] For example, we explained that under State Farm's construction, if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury would "result from" the former's bodily injury and therefore fall under the single bodily injury limit.
[11] An issue raised by the Ferrells in their brief is the effect of the $2,500 settlement made by Fireman's Fund with Allstate (the Ferrells UM carrier). However, the Ferrells failed to file a writ application with this Court contesting this issue. Any party aggrieved by the decision of the court of appeal must file an application for writs in this Court. Because the Ferrells failed to do so and only raised this issue in their brief to this Court, the decision of the court of appeal crediting Fireman's Fund $2,500 it paid to Allstate against the amount owed to the Ferrells is final.
[12] La. R.S. 13:4203 provides that:

Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
[13] The parties also raise the issue of whether Fireman's Fund unconditionally tendered payment of its policy limits such that any interest that was accruing would end upon such a tender. However, because we hold that Fireman's Fund is not liable for interest on any amounts in excess of its policy limits, this issue is rendered moot.