# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 04-445

REBECCA ANN HARDIE, ET AL.

VERSUS

PROFESSIONAL PHYSICAL REHABILITATION HOSPITAL, LLC, ETC.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 35,948
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## GLENN B. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.

**AFFIRMED.**

**Joseph T. Dalrymple**
**Rivers, Beck, Dalrymple, & Ledet**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**(318) 445-6581**
**Counsel for Plaintiffs/Appellees**
    **Rebecca Ann Hardie**
    **Julie Renee Cotton**
    **Allen Ray Parker**
    **Don Mathew Parker**

**Russell Purvis, Jr.**
**Smith, Taliaferro, Seibert**
**P.O. Box 277**
**Jonesville, LA 71343**
**(318) 339-8526**
**Counsel for Plaintiffs/Appellees**
**Rebecca Ann Hardie**
**Julie Renee Cotton**
**Allen Ray Parker**
**Don Mathew Parker**

**Edward E. Rundell**
**Gold, Weems, Bruser, et al**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**Counsel for Defendant/Appellant**
**Professional Physical Rehabilitation Hospital**

**Madeline Lee**
**Bolen, Parker, & Brenner, LTD**
**P.O. Box 11590**
**Alexandria, LA 71315-1590**
**(318) 445-8236**
**Counsel for: Defendant Appellee**
**Kraig Allen Ward, M.D.**

GREMILLION, Judge.

In this case, the defendant-appellant, Professional Physical Rehabilitation Hospital, L.L.C., appeals the judgment in favor of the plaintiff, Rebecca Ann Hardie, on the issue of the available limits of Professional Rehab's insurance policy issued by CNA. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Hardie and her three siblings brought suit following the death of their mother, Emma Parker, due to the negligence of Professional Rehab. Parker was admitted to Professional Rehab on January 20, 1998, and died on January 27, 1998, of a heart attack at a nearby hospital. Hardie filed a motion for summary judgment on the issue of insurance coverage and the applicable liability limit she and her siblings each had under the insurance policy urging that the $100,000 limit was applicable to each of their claims, subject to the collective limit of the CNA policy totaling $300,000.

Following a hearing, the trial court granted summary judgment in favor of Hardie finding that "the policy issued to defendants provides coverage so that each claim by each plaintiff is subject to the $100,000.00 'each person limit' and that all plaintiffs [sic] claims are subject to the 'total limit' of $300,000.00."

Professional Rehab now appeals.

**ISSUES**

Professional Rehab assigns as error:

1.    The trial court's finding that individual mental anguish and loss of consortium claims of each wrongful death/survival action plaintiff were subject to the $100,000 "each person limit" of the CNA policy and that Hardie's claims were

subject to the policy's $300,000 "total limit."

## SUMMARY JUDGMENT

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Civ.Code art. 966(B)(C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Interpretation of an insurance policy is a question of law, and we have authority to construe the provisions of the policy in order to resolve questions of coverage. *Stoute v. Long*, 98-683 (La.App. 3 Cir. 12/9/98), 722 So.2d 102.

"Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La.Civ.Code art. 2056. If an exclusionary clause is deemed ambiguous, an insurance policy must be liberally

2

construed in favor of coverage; provisions susceptible of different meanings must be interpreted to render coverage effective rather than ineffective. La.Civ.Code art. 2049; *see Capital Bank & Trust Co. v. Equitable Life Assurance Soc'y*, 542 So.2d 494 (La.1989). If more than one reasonable view of the exclusion proviso exists, "any ambiguity must be construed against the insurance company and in favor of the reasonable construction that affords coverage." *RPM Pizza, Inc. v. Auto. Cas. Ins. Co.*, 601 So.2d 1366, 1369 (La.1992).

The issue in this case is whether the insurance policy provided $100,000 worth of coverage (with a maximum of $300,000 for all claims) to each plaintiff for wrongful death and/or *Lejuene* bystander claims under La.Civ.Code art. 2315.6. Professional Rehab discusses at length Hardie's failure to prove a *Lejeune* claim. However, that issue is not before us. The summary judgment was granted solely on the applicable limits of the insurance policy. The merits of the claims are, thus, reserved for trial.

The trial court held:

The court finds that the language contained in the policy issued to defendant is subject to more than one reasonable interpretation. The policy does not state whether the $100,000.00 "each person limit" applies to <u>all</u> claims by <u>all</u> persons as the result of injury or death of another person. Also, the policy does not specify whether its $100,000.00 limitation applies to all claims, of whatever type, by each person who claims bodily injury or to all claims by all persons due to injury or death of another person.

The court finds there is no material issue of fact and that mover is entitled to judgment as a matter of law. The policy issued to defendants provides coverage so that each claim by each plaintiff is subject to the $100,000.00 "each person limit" and that all plaintiff claims are subject to the "total limit" of $300,000.00.

3

## THE POLICY

CNA issued Professional Rehab a policy with a Professional Liability Insuring Agreement and a General Liability Insuring Agreement. The Professional Liability portion of the policy in the "Limits of Your Coverage" section provides for $100,000 "each person limit" and a $300,000 "total limit." The CNA insurance policy states (Emphasis added):

> Limits of Your Coverage
>
> The Limits of Your Coverage shown on the Declaration Page apply as follows:
>
> The "each person limit" is the most we shall pay under the Insuring Agreement for *all claims* resulting from the *injury or death* of any one person, including any claims for loss of services and/or for mental distress.
>
> The "total limit" is the most we shall pay for all claims covered under the insuring Agreement. The "total limit" applies regardless of the number of person [sic] bringing claims, and regardless of the number of claims brought under the Insuring Agreement.

The term "injury" is not defined in the Professional Liability portion of the policy. However, in the General Liability portion of the policy in which CNA agrees to "pay those sums that those covered become legally obligated to pay as damages because of bodily injury," the term "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death."

Hardie argues that the broader "injury" in the Professional Liability portion of the policy, since not defined, includes any type of injury including those injuries one suffers as part of a wrongful death claim, as well as the those injuries which arise pursuant to a *Lejeune* claim. Professional Rehab, on the other hand, argues that the word "injury" in the Professional Liability portion of the agreement

4

is subject to the definition of "bodily injury" as defined in the general liability portion of the policy. We agree with Hardie. Following the normal rules pertaining to the construction and interpretation of insurance contracts, we find that the word "injury" covers any injury recognized by the law. The words of the policy are clear and do not lead to absurd consequences. CNA agrees to pay the "each person limit" for *all claims* resulting from *injury*. Undoubtedly, a wrongful death claim is the petitioner's action for the injuries he/she suffers upon the death of a loved one. CNA could have used the term "bodily injury" but chose not to do so. It further could have limited its coverage by modifying its language in numerous ways. As it reads now however, an injured person, such as a survivor in a wrongful death claim, is covered under the "each person limit" for *all claims.* The same result is reached when addressing whether an Article 2315.6 claim is covered. A *Lejeune* bystander claim arises from the mental and emotional injuries suffered by the plaintiff from viewing the negligent treatment of the primary victim. As such, the plaintiff suffers injuries which are compensable under the law. Thus, the individual is covered under the policy for his injury.

Both parties cite several Louisiana Supreme Court cases in support of their position. In *Crabtree v. State Farm Insurance Co.,* 93-0509 (La. 2/28/94), 632 So.2d 736, Mrs. Crabtree, who was following behind her husband in a separate vehicle, witnessed him being struck by a vehicle as he operated his motorcycle. When she approached him she found that his leg was almost completely severed from the knee down. The Crabtrees argued that the wife's *Lejeune* claim was a separate "bodily injury," thus, entitling her to her own per person limit, subject to the per

5

accident aggregate.  State Farm argued that Mrs. Crabtree's claim was "derivative" and, therefore, subject to the singly policy limit attributable to Mr. Crabtree.  In the alternative, State Farm argued that mental anguish did not qualify as "bodily injury."  The section in the State Farm policy pertaining to the limits of liability stated:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability—Coverage A—Bodily Injury, Each Person, Each Accident".  Under "Each Person is the amount of coverage [$25,000] for all damages due to *bodily injury* to one *person*.  "*Bodily Injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*.  Under "Each Accident" is the total amount of coverage [$50,000], subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

*Id.* at 739.

The supreme court  discussed several court of appeal decisions finding that loss of consortium claims are derivative and, therefore, subject to the per person limits.  However, the supreme court found that it was unnecessary to determine whether a *Lejeune* claim is derivative, instead finding that, pursuant to the policy provisions, even if the claim "derived" or "resulted from" her husband's injuries, it constituted a "bodily injury" within the definition of the policy.  It further found that construing the policy as a whole, the terms "bodily injury to one person" did not encompass Mrs. Crabtree's claim, therefore, it was not subject to the single person policy limit.

The supreme court then discussed whether, under this particular policy, mental anguish fell within the definition of "bodily injury."  The supreme court emphasized that despite the holdings in other cases, they "do not provide the final word on how this policy should be interpreted." *Id*. at 743.  The supreme court then

6

found that the definition of "bodily injury" in the policy was ambiguous and that the drafters of the policy could have easily restricted its definition to only external physical injuries.

In the instant case, we find that the word "injury" easily includes both mental and physical injuries. Webster's Collegiate Dictionary 644 (11th ed. 2003), defines injury as "hurt, damage, or loss sustained," which easily encompasses both wrongful death and *Lejeune* claims. In following the supreme court's holding in *Crabtree,* we conclude that the policy drafters could have easily limited its coverage by defining "injury" and limiting its scope to only physical external injuries.

In *Ferrell v. Fireman's Fund Insurance Co.,* 96-3028 (La. 7/1/97), 696 So.2d 569, the Ferrells were injured in a multi-vehicle accident. Mrs. Ferrell sought coverage for her loss of consortium claim pursuant to the per *accident* bodily injury limits. The issue was whether she was covered separately out of the per accident bodily injury limits for her own "bodily injury" or whether her loss of consortium claim was derivative of her husband's injuries and, therefore, must be satisfied out of the per *person* limits. While the supreme court found that loss of consortium claims are derivative of the primary victim's injuries as a matter of law, they also stated:

> [B]ecause an insurance policy is a contract between the parties, and the parties are free to contract regarding the extent of coverage contained therein, reference must be made to the language of the policy to determine the extent of coverage.

*Id.* at 576.

However, the supreme court went on to say:

Upon examination of the language of the policy, we hold that

7

damages for loss of consortium are covered under the policy provision providing coverage for "damages for bodily injury for which any covered person becomes legally responsible because of an auto accident." . . . . Unlike *Crabtree*, however, where we determined that mental anguish constituted a separate "bodily injury", we do not believe that loss of consortium is covered as a separate bodily injury under the per accident bodily injury limits of the policy. Coverage for loss of consortium exists solely under the per person bodily injury limits of the policy because loss of consortium is derivative of the primary victims [sic] injuries and not a separate bodily injury.

*Id.*

We find the language in this policy more closely analogous to the policy in *Crabtree*. Moreover, we find the issue of whether the wrongful death claim "derives" from the primary victim's injuries is irrelevant. The insurance company is in a superior position to clarify the meanings of its policy and could have easily excluded wrongful death claims from being covered individually. On the contrary, the plain language infers that *all claims for injury*, whether derivative or not, are covered. Additionally, the supreme court's decisions appear to be somewhat inconsistent regarding the "derivative" nature of either a wrongful death or *Lejeune* claim. Both causes of action arise only after an injury to another person. However, the wrongful death claim has been classified as "derivative," (as a matter of law) whereas the loss of consortium claim is not. In another case, *Walls v. American Optical Corp.*, 98-0455, p. 15 (La. 9/8/99), 740 So.2d 1262, 1274, the supreme court again addressed the issue of whether a wrongful death claim is derivative, stating:

We do not consider the wrongful death action to be a derivative cause of action. Rather the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victims death.

Nevertheless, the supreme court has emphasized that coverage

8

determinations should primarily be based on the individual policy provisions.[1] We find that most persuasive, and for the aforementioned reasons, find this particular policy provides $100,000 per person limits for both wrongful death and/or *Lejeune* claims up to an aggregate of $300,000 for all claims.

## CONCLUSION

The trial court's judgment granting summary judgment in favor of the plaintiff-appellee, Rebecca Ann Hardie, is affirmed. All costs of this appeal are assessed against the defendant-appellant, Professional Physical Rehabilitation Hospital, L.L.C.

**AFFIRMED.**

---

[1] In *Crabtree*, 632 So.2d at 740, the court stated: "Because our decision must rest solely on the terms of the insurance contract between the parties."