NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**23-428**

**STATE IN THE INTEREST**

**OF S. R.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2021-407
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED, AS AMENDED, AND REMANDED, WITH INSTRUCTION.**

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine 3, Suite 150**
**Lafayette, LA 70508**
**(337) 739-5640**
**COUNSEL FOR OTHER APPELLEE:**
    **Department of Children and Family Services**

**Dinah Sledge Cain**
**Asst. Attorney General**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR OTHER APPELLEE:**
    **State of Louisiana**

**Julie Koren Vaughn Felder**
**Attorney at Law**
**P. O. Box 80399**
**Lafayette, LA 70598**
**(337) 856-3444**
**COUNSEL FOR OTHER APPELLEE:**
    **Karen Romero**

**Franchesca L. Hamilton-Acker**
**Acadiana Legal Service Corp.**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR OTHER APPELLEE:**
    **S. R. (minor child)**

**Gabe A. Duhon**
**Attorney at Law**
**105 Tivoli Street**
**Abbeville, LA 70511-0478**
**(337) 893-3423**
**COUNSEL FOR OTHER APPELLANT:**
    **A. J. R. (father)**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P. O. Box 52988**
**Shreveport, LA 71135**
**(318) 222-1700**
**COUNSEL FOR OTHER APPELLEE:**
    **M. J. (mother)**

**McKinley B. James, Jr.**
**The James Firm, LLC**
**2000 Moss Street**
**Lafayette, LA 70501**
**(337) 703-4312**
**COUNSEL FOR OTHER APPELLEE:**
**M. J. (mother) S. R. R.**
**S. R. (minor child)**

**Shanequa Watkins**
**Case Worker**
**100 Asma Blvd, Ste. 260**
**Lafayette, LA 70508**
**(337) 262-1179**
**COUNSEL FOR OTHER APPELLEE:**
**Department of Children and Family Services**

**Crystal Brison**
**Case Worker**
**100 Asma Blvd, Ste 260**
**Lafayette, LA 70508**
**(337) 262-1179**
**COUNSEL FOR OTHER APPELLEE:**
**Department of Children and Family Services**

**DJenaba Broussard**
**Case Worker**
**100 Asma Blvd, Ste 260**
**Lafayette, LA 70508**
**(337) 262-1179**
**COUNSEL FOR OTHER APPELLEE:**
**Department of Children and Family Services**

**Cameron Hulin**
**Case Coordinator**
**215 E. Pinhook Road**
**Lafayette, LA 70501**
**(337) 268-5111**
**COUNSEL FOR OTHER APPELLEE:**
**CASA of SOLA**

**Trent Borne**
**825 Kaliste Saloom**
**Brandywine 3, Suite 150**
**Lafayette, LA 70508**
**(337) 262-5901**
**COUNSEL FOR OTHER APPELLEE:**
**Department of Children and Family Services**

**ORTEGO, Judge.**

The primary issue presented by this Child in Need of Care ("CINC") proceeding is whether the trial court erred in awarding sole custody to the child's mother, with the father receiving liberal visitation rights. Because we find that the trial court did not manifestly err in its custody determination, we affirm. However, we remand this matter to the trial court for the limited purpose of issuing an amended judgment that conforms with the requirements of La.Ch. Code art. 710.

## FACTS AND PROCEDURAL HISTORY

This case involves custody of a minor child, S.R.[1] born on May 14, 2021. S.R. was born five weeks premature, and on May 14, 2021, the Department of Children and Family Services ("DCFS") intervened after S.R. had been deemed a Level I-High Risk Substance Exposed Newborn, and S.R. was found to be in need of care on that same date. S.R.'s parents, Albert Romero ("the father") and Mikayla Jerkins ("the mother"), were both struggling with substance abuse issues at the time of S.R.'s birth. Specifically, both the mother and S.R. tested positive for amphetamines, cannabis, and opiates.

The factual and procedural history of this matter spans from May 2021 to February 2023. Within this time frame, however, there are two hearings of particular importance: a permanency hearing on January 10, 2023, and follow-up hearing on February 7, 2023. These will be addressed in depth under separate headings in the recitation of the procedural history below.

Following the intervention of DCFS, on May 25, 2021, the parents voluntarily agreed to allow the state to take custody of S.R. while they sought

---

[1] We refer to the victim by her initials in accordance with La. R.S. 46:1844(W).

treatment for their substance abuse issues. DCFS outlined a case plan for both the father and mother to complete in order to regain custody of S.R. and S.R. was placed with her paternal grandmother, Karen Romero, as her foster parent.

Thereafter, both parents entered into different drug rehabilitation programs, which limited their contact with S.R.

In August 2021, the mother moved to Tallahassee, Florida, and the father worked a temporary job in Pensacola, Florida. A hearing was held on October 18, 2021, wherein DCFS representatives for the mother and the father stated that as of that date, neither parent had begun work on their case plans and were not maintaining contact with DCFS.

Apparently, in January 2022 the father was arrested in Florida pursuant to his failure to maintain contact with his probation officer, in another criminal matter. At some point thereafter, he returned to Lafayette, Louisiana. At a January 11, 2022 hearing, it was established that the mother was still residing in Florida and had completed inpatient treatment, but she had still failed to complete "basic" components of her case plan, such as maintaining housing, employment, and demonstrating long-term sobriety. The father was still not in communication with DCFS.

On July 6, 2022, a CINC 12-month review hearing was held wherein DCFS recommended S.R. be released for adoption since neither the father nor the mother had made significant progress towards their care plans. Specifically, a DCFS representative, Trent Borne, testified that the mother was working and had found housing in Florida. He expressed concern about the lack of consistent communication between the mother and S.R., as the in-person visits and FaceTime calls were infrequent. There were no in-person visits with mother and S.R. in June,

2

July, October, or November 2022.[2] Furthermore, the mother tested positive for THC in May, August, and September 2022. Additionally, the mother had failed to obtain a certificate of completion for an outpatient substance abuse problem and failed to find suitable, long-term housing at that time.

As to the father, Mr. Borne testified that the father was incarcerated and "[did] not want to work a case plan," and he preferred their child be placed with his mother, Karen Romero.

The trial court ruled against the DCFS recommendation that the child be released for adoption, but ordered the mother to maintain consistent employment, obtain suitable long-term housing, maintain sobriety, and visit S.R. in person on a monthly basis.

On November 9, 2022, a review hearing was held. The father was incarcerated at the time and did not participate via Zoom. A DCFS representative testified that the father was participating in a reentry program and now wanted custody of S.R. as opposed to relinquishing custody to his mother. The representative also testified that the father was willing to work on his case plan. As to the mother, the representative testified that the mother had recently moved in with the family of her second child's father in Florida, and that the housing was suitable. The mother had also completed a parenting course. The representative also testified that the mother would participate in an aftercare program as part of maintaining sobriety. However, the representative expressed concern regarding the infrequency of the mother's visits with S.R. DCFS maintained its recommendation that S.R. be released for adoption. The trial court rejected that plan and recommendation and ordered that the court's current custody

---

[2] The mother did visit S.R. on August 7-8, 2022.

plan be maintained, and a transition plan would be established and implemented by January 2023.

On November 18, 2022, the grandmother filed a petition to intervene and transfer to civil court, which was summarily denied by the trial court on November 20, 2022, without a hearing. A trial placement plan of S.R. with the mother in Florida began on December 16, 2022, which consisted of a two-to-three weeks extended visit that ended on January 10, 2023. During that period, DCFS workers were sent twice to observe these visits.

*January 10, 2023 Hearing*

On January 10, 2023, the permanency hearing ("January 10th hearing") was held. A DCFS case worker, Trent Borne, testified regarding the mother's progress in her case plan, as follows:

> [She] worked her case plan components. The last thing, I believe, was aftercare recommendations from the [intensive outpatient program], and she is enrolled in aftercare therapy. As recommended, she's completed parenting and she completed the other case plan components. There was a concern that arose with a recent drug screen that was on 12/16 where she had a high amount of ethanol . . . This was during the extended visits [with S.R.], so I was just concerned. We did put a safety plan in place, but we did another drug screen when she came back that was negative for any high amounts of ETG. She had a reasonable story about why it was high, but I can go into more detail if you need more detail regarding that. Other than that, she's been in compliance.

It was also established that since S.R.'s birth, the mother was in compliance with her case plan, had recently delivered a second healthy drug-free child, had found suitable long-term housing and had sufficient income to support the family. Additionally, S.R. and the second baby had their own rooms in the house and there was more than enough income to support the family. Furthermore, the mother had found daycare for S.R. and a pediatrician, and the visits between S.R. and the mother

4

had gone well. Mr. Borne testified that the father had made some progress in his own case plan:

> [He's] done pretty well, too within the last couple of months. He's enrolled into two IOP programs, counseling, parenting. He's completed several different components of the parenting program that he's in. He's found housing, and during the visit that we had, there's been no concerns. He's done well during the visits.

Mr. Borne further stated that the visits between the father and S.R., both in person while S.R. was in Lafayette, and by FaceTime when the child was with the mother in Florida, went well. The trial court noted its concern of the father's continuing sobriety, which he had not yet accomplished and completed. Specifically, Mr. Borne testified, that as to the father, DCFS needed to "see behavioral changes, and the biggest behavioral change is really with the substance abuse. So, we have to see him able to maintain sobriety."

Finding that the mother had completed her case plan, the trial court stated that it was always the goal to reunite children with their parents, if possible, and that he would grant the mother custody, stating:

> And their mother has worked her case plan and completed her case plan, and it's my obligation to reunite the child with her mother. I know that's going to cause great grief for you guys. It's what happens. And that's why we have a transition plan.

DCFS asked if the trial court was granting the mother custody, and the trial court responded that the parties would be ordered to come back in February to handle the transition of custody to the mother. The court further remarked that it would fashion a permanent custody order if an agreement could not be reached between the parties prior to the next hearing, and a family court would then have to step in.

5

Specifically, the trial court noted:

> I'm hopeful in February that . . . [S.R.]'s father will have continued to do what he needs to do in his recovery, and there will be a custody plan, but this child is going to Florida. And that's what the plan is. And then at some point in time, if everybody can't work it out, then you can go to a domestic court. But the domestic court is probably going to be in Florida. And so -- because that's where the establishment of the child will be. But hopefully you guys can work that out. That's part of what my hope is, that everybody will come to an agreement.

The trial court noted DCFS's recommendation that of "[c]ustody be returned to Mom; with reasonable visitation to Dad." Thus, S.R. was ordered to be placed with the mother in Florida.

*February 7, 2023 Permanency Hearing*

The matter then came before the trial court on a follow-up hearing on February 7, 2023. The parties stated that they could not reach a resolution regarding the custody arrangement. DCFS maintained its recommendation of "[c]ustody be returned to Mom; with reasonable visitation to Dad." Over the objection of counsel for the father and without allowing testimony, the trial court granted sole custody to the mother with reasonable visitation to the father. In open court, the trial court noted:

> [T]hat's what's going to happen. And somebody else can go fight in a court somewhere else. Dad is not in his case plan to a point where I would give him custody and so that's the problem why I don't give joint custody today. Mom has worked her case plan and shown sobriety and everything to a point where the Department recommended custody to Mom. And so that's why we are here where we are. So you can't illicit testimony that's going to change that and the point is that that's going to be what my order is with reasonable visitation.

That same day, the court issued a Permanency Hearing Order ("the February 7th order"). Relevant to one of the father's assignments of error, in section IV, titled "REASONABLE EFFORTS FINDINGS," a checkmark appears next to the statement "made the following reasonable efforts to reunify the parent and

6

child(ren), [S.R.], or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan." Handwritten in the blank space next to this statement is the word "stipulation."

In a judgment dated February 22, 2023 ("the February 22 judgment"), the court awarded sole custody of S.R. to the mother, "liberal and reasonable visitation rights on a weekly basis" to the father. The court also officially closed the CINC matter and discontinued the involvement of DCFS. Finally, the judgment "[relinquished] juvenile jurisdiction over this matter relative to [S.R.] with any custody/visitation/support issues to be filed and addressed in the appropriate family court venue." No specific reasons for judgment were contained in the February 22 judgment. It is from the February 22, 2023 judgment that the father appeals.

## ASSIGNMENTS OF ERROR

The father assigns five errors:

1. The trial court committed legal error in rendering Judgment on February 7, 2023, purportedly by "stipulation" granting the mother, Mikayla Jerkins, custody of S.R., where no such stipulation existed.

2. The trial court committed legal error in rendering Judgment on February 7, 2023, over the objection of counsel for the father and without allowing testimony and evidence from the father as is required by La.Ch.Code articles 706 & 709.

3. The trial court committed legal error and/or abuse of discretion in rendering Judgment granting the mother, Mikayla Jerkins, sole custody of S.R. on February 22, 2023, fourteen (14) days after it relinquished jurisdiction and closed the case, without a hearing or evidence, and without circulation pursuant to rule 9.5 or otherwise.

4. The trial court committed legal error and/or abuse of discretion in failing to consider La.Ch.Code article 702(D) and the best interests of the child.

5. The trial court committed legal error in failing to render a written judgment indicating findings of fact as required by La.Ch.Code article 710.

## STANDARD OF REVIEW

A court of appeal may not set aside a trial court or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). However, legal errors are reviewed under a *de novo* standard:

> However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94–1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds*, 96–3028 (La.7/1/97); 696 So.2d 569, *reh'g* denied, 96–3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006.

*Evans v. Lungrin,* 97-541, 97-577, p. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

## LAW AND DISCUSSION

Louisiana Children's Code article 601 states that the purpose of the "Child in Need of Care" title is "to protect children whose physical or mental health, welfare, and safety is substantially at risk of harm by physical abuse, neglect, or exploitation." Furthermore, the "health, welfare, safety, and best interest of the child shall be the paramount concern in all proceedings[.]" *Id.* We will examine each of the father's assignments of error individually, with the exception of assignments four and five, which are addressed together.

*Assignment of Error Number One*

**The trial court committed legal error in rendering Judgment on February 7, 2023, purportedly by "stipulation" granting the mother custody of S.R., where no such stipulation existed.**

The father argues that the February 7, 2023 judgment "seems to indicate" that the judgment was based upon a "stipulation" by the parties. In brief, the father argues

8

that he did not stipulate to the custody arrangement decreed by the trial court on that date.

The mother argues that the "stipulation" notation on the February 7th order referenced the original removal of S.R. from their custody and her being placed through DCFS in the custody of her paternal grandparents. The mother contends that the trial court clearly did not find that the parties had stipulated to a custody plan, as evidenced by the transcript of the January 10, 2023 hearing, wherein the trial court stated: "That's part of what my hope is, that everybody will come to an agreement." Furthermore, at the February 7, 2023 hearing, the parties did not agree with the custody awarded by the court, i.e., the mother with sole custody and the father with liberal, reasonable visitation pursuant to the DCFS recommendation.

After a review of the record, we find that the court clearly did not find that the parties stipulated to the custody award at the February 7, 2023 hearing. Though it's not entirely clear what the "stipulation" notation refers to, we find that if it was done in error, the error was harmless. Thus, we find no merit to this assignment of error.

*Assignment of Error Number Two*

> **The trial court committed legal error in rendering judgment on February 7, 2023, over the objection of counsel for the father and without allowing testimony and evidence from the father as is required by La.Ch. Code arts. 706 and 709.**

The father argues that La.Ch. Code art. 706 allows all parties in permanency hearings the right to testify, the right to confront and cross examine adverse witnesses, the right to present evidence and witnesses, and the right to counsel. The father argues that no evidence was taken at the February 7th hearing, save for the minimal testimony of a DCFS worker. The father argues that once the trial court heard the recommendation, it immediately accepted the recommendation, stating,

"Yeah, that's what's going to happen. And somebody else can go fight in a court somewhere else…you can't illicit testimony that's going to change that."

The mother contends that the father's argument ignores the January 10, 2023 hearing, wherein testimony was adduced regarding the compliance of both parents with their respective case plans, and the father's attorney was permitted to cross examine Trent Borne, the DCFS witness. Mr. Borne testified that the mother showed compliance with her case plan, such as maintaining steady work and housing, and completing other recommended courses of action, such as a parenting class. On the other hand, months remained on the father's case plan. In other words, the mother argues that the February 22, 2023 judgment merely reflects the findings the trial court made at the January 10, 2023 hearing after hearing the evidence and testimony.

We find that the father's argument is misplaced, as it ignores the January 10, 2023 hearing, wherein testimony was adduced regarding the compliance of both parents with their respective case plans, and the father's attorney was permitted to cross examine Trent Borne, the DCFS witness. During that hearing it was established the mother complied with her case plan, and showed she secured steady work and housing. It was also established that the father still had work to do on his case plan, as well as prove he could maintain sobriety.

After a thorough review of the record, we find that the trial court made sufficient oral factual findings at the January 10, 2023 hearing to support its findings of the February 7th hearing, and the February 22, 2023 judgment. This assignment of error lacks merit.

**The trial court committed legal error and/or abuse of discretion in rendering judgment granting the mother sole custody of S.R. 14 days after it relinquished jurisdiction and closed the case without a hearing or evidence and without circulation pursuant to Rule 9.5 or otherwise.**

The father argues that the February 22, 2023 judgment was not circulated nor certified under rule 9.5. The father also contends that it was inconsistent with the February 7th order in that it awards sole custody of S.R. to the mother, whereas the February 7th order made no such custody determination. The father furthermore argues that the February 7th order is entirely unsupported by the limited evidence adduced, which included the fact that the father had completed all requirements of his case plan save his sobriety, which would continue to be monitored. The February 22, 2023 judgment also fails to designate specific periods of visitation in favor of the father and fails to include a "best interest of the child" analysis. The father notes that counsel for the father expressed concern regarding the mother's positive marijuana test, with regard to S.R.'s relocation and the award of sole custody in favor of the mother. The father also contends that though the trial court remarked "dad is not as far in his case plan," he had completed most of it at the time of the custody award.

The mother argues that the February 22, 2023 judgment put into written form the findings of the trial court that were rendered in open court on January 10, 2023, and February 7, 2023. Also, the mother contends that the February 22, 2023 judgment is consistent with the oral rulings of the trial court at the February 7, 2023 hearing. For these reasons, though the mother acknowledges that the February 22, 2023 judgment did not comply with the requirements of Rule 9.5, any errors are harmless.

We agree that the trial court erred in issuing a judgment which failed to comply with the requirements of Rule 9.5, and in issuing the judgment after relinquishing jurisdiction of the case. However, we find that these errors are harmless.

*Assignments of Error Numbers Four and Five*

**The trial court committed legal error and/or abuse of discretion in failing to consider La.Ch. Code article 702(D) and the best interests of the child.**

As to whether the trial court considered the best interest of the child, the father argues that the trial court abused its discretion in denying the grandmother, Karen Romero's, petition to intervene without a hearing and failing to consider continuing contact between S.R. and Ms. Romero, who has spent the most time as S.R.'s primary caregiver.

The mother argues that the best interest of the child was considered at the January 10, 2023 hearing, wherein the DCFS witness testified that the mother was in compliance with her case plan in January and February of 2023, but the father had months remaining in his plan.

As to the judgment itself, the father contends that the trial court judgment does not conform to the dictates of La.Ch. Code art. 710, which requires the court to include certain findings of fact. La.Ch. Code art 710, states, in pertinent part:

A. In a written judgment, the court shall make findings of fact regarding:

    (1)    Whether the child can safely return to the custody of the parent and shall order return of custody to the parent if it is safe to so.

    (2)    The permanent plan that is most appropriate and, in the best, interest of the child in accordance with the priorities of Article 702(C).

12

(3)     Except as otherwise provided in article 672.1, whether the department has made a reasonable effort, as defined in Article 603 to reunify the parent and child or to finalize the child's placement in an alternative safe and permanent home in accordance with the permanent plan.

(4)     Whether an out-of-state placement is safe, appropriated, and otherwise in the best interest of the child.

(5)     For children whose permanent plan is placement in the least restrictive, most family-like alternative permanent living arrangement, why, as of the date of the hearing, the plan is the best permanency plan for the child and provide compelling reasons why it continues to not be in the best interest of the child to return home, be placed for adoption, be placed with a legal guardian or be placed with a suitable relative.

The father argues that there are no written judgments in this matter that render the trial court ruling in compliance with article 710, and no written reasons for ruling.

The mother reiterates that the trial court made findings of fact at the January 10, 2023 hearing, and that the error in failing to comply with La.Ch. Code art. 710 was harmless.

After a review of the record, we find that the February 22, 2023 judgment is in fact supported by testimony and evidence adduced at the January 10, 2023 hearing. However, we also find that the trial court erred in issuing the February 22, 2023 judgment which failed to conform with the requirements of La.Ch. Code art. 710.

Therefore, and on this limited basis, we remand this matter to the trial court for the purpose of issuing a judgment, amending the February 22, 2023 judgment, to be in compliance with La.Ch. Code art. 710, and specifically list the trial court's oral findings of facts as stated at the January 10, 2023 hearing.

## DECREE

For the reasons stated above, the substance of the trial court's judgment, granting sole custody of S.R. to the mother and liberal visitation to the father, is affirmed. However, this matter is remanded for the limited purpose of amending the February 22, 2023 judgment to comply with La.Ch. Code art. 710.

**AFFIRMED, AS AMENDED, AND REMANDED, WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.